# DAVIS v. HARTWIG et al., Appellants.

### In Banc, March 30, 1906.

1. **INJUNCTION: Past Wrongs: No Threatened Injury: Public Officials.** A bill of injunction alleging only past wrongs of officers of an insane hospital charged with high statutory discretion and armed with flexible power in the administration of charity to unfortunate persons, and containing no complaint of a threatened or impending injury, does not state a cause of action. Courts do not, in injunction proceedings, adjudicate upon completed matters, such as past bookkeeping, past estimates, past expenditures, past management, etc. It is fundamental that an injunctive writ cannot be used to correct past injuries.

2. ——: ——: ——: **Hospital for Insane: Charges for Clothing and Buildings.** Where the bill for injunctive relief, brought against the officers of a state hospital for the insane and against the county court, charges no threatened injury, but only past and completed wrongs, the court will not determine whether or not the estimates of the board of managers and superintendent are too high, or whether or not "support and maintenance" cover elements of wear and tear on furniture, or amusement and protection against cold, or medicines or salaries of attendants, or whether or not any money contributed by the county may be used in temporary or permanent betterments to the grounds and buildings, or whether or not the board's requisitions on the county may include any charge for clothing in excess of what may be actually used by the county's patients and in excess of $2.50 per week, for the reason that the petition contains no basis for a decision upon such questions.

3. ——: **Illegal Expenditure of Taxes: Suit by Taxpayer.** Where there is no evidence that the plaintiff who, as a taxpayer, sues the board of managers and superintendent of an insane hospital belonging to the State, to prevent the illegal expenditure of money raised by taxation, is a taxpayer, the suit should be dismissed.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman*, Judge.

REVERSED.

*Vories & Vories, Woodson & Woodson, Silver & Brown* and *E. M. Harber* for appellants.

(1)   This case must be reversed, because there is no evidence which tends in the remotest degree to show that Abraham Davis, the plaintiff, was a resident of Buchanan county, or of the State of Missouri, or that he was a taxpayer of either, or that he owned or possessed any property of any kind located in this State, or elsewhere; in fact, he was not placed upon the witness stand, nor did he testify at all in this case.   (2)   The money paid into the State treasury, by the counties for the support of the insane poor, is not county, but State money.   Laws 1893, pp. 184 and 185; R. S. 1899, secs. 7803, 7804, 7805, 7806, 7807, 7808, 7809; State ex rel. v. St. Louis, 34 Mo. 546; State ex rel. v. Pike Co., 144 Mo. 275; School Dist. v. Weber, 75 Mo. 558; State ex rel. v. Holloway, 70 Mo. 137; State ex rel. v. Field, 119 Mo. 613.   The State can even collect it for one purpose and use it for another.   (3)   The power given the board of managers of Asylum No. 2 under section 4867, Revised Statutes 1899, is a discretion not reversible by any authority except the Legislature.   State ex rel. v. Field, 108 Mo. 614; State ex rel. v. Marshall, 82 Mo. 484; Frank v. St. Louis, 145 Mo. 600.   And said board of managers have full discretion as to the care and treatment given the patients and to adopt such methods as may be deemed beneficial.   Clow v. Worsham, 74 S. W. 351.   (4)   It is always presumed that the Legislature does not intend absurdity, inconvenience or injustice, and that such construction will be adopted as appears most reasonable and best suited to accomplish the objects of the statute.   Sutherland on Statutory Construction, sec. 3321; Norman v. Central Kentucky Asylum, 17 S. W. 150.   (5)   It is presumed that the Legislature is acquainted with the law; that it has a knowledge of the state of it upon the subjects upon which it legislates; that it is informed of previous leg-

islation, and the construction it has received. Sutherland on Statutory Construction, sec. 333. (6) And that the courts will adopt that construction of the statutes that for a long series of years had been given by the officers whose duty it is to enforce it. Ross v. Railroad, 111 Mo. 18; Venable v. Railroad, 112 Mo. 103; Verdin v. St. Louis, 131 Mo. 125; Watson v. Alderson, 146 Mo. 351; Fears v. Riley, 148 Mo. 64; State ex rel. v. Railroad, 135 Mo. 618; Forry v. Ridge, 56 Mo. App. 615; Asphalt Co. v. Meservy, 103 Mo. App. 194. (7) Maintenance and support of patients is broad enough to include food, care, shelter and all other conveniences necessary for their comfort and well-being, including the repairs of buildings. Cushing v. Quigley, 29 Pac. 337; Appeal of Taylor, 11 Atl. 307; In re Insane Hospital, 3 Pa. Dist. 223; Orphan Society v. Fayette Co., 69 Ky. 421; Electric Co. v. Laughlin, 63 N. W. 941; Regina v. Gravesend, 5 El. & B. C. 459; Gould v. City of Lawrence, 35 N. E. 462.

*O. E. Shultz* and *Eastin, Corby & Eastin* for respondent.

(1) Plaintiff as a taxpayer of Buchanan county has the right to maintain this suit. Spelling on Injunctions, sec. 614; Newmeyer v. Railroad, 52 Mo. 81. If funds described in the petition have been misapplied, plaintiff, on his own behalf and on behalf of other taxpayers of the county, has his action. Buchanan county maintains 225 patients at the institution. The funds required to support those patients come from the general revenue of the county. Taxpayers outside the county contribute nothing to the fund, neither do persons in the county who pay no taxes. It is therefore an injury peculiar to one class of persons, namely, the taxpayers of Buchanan county. Hopper v. Ely, 46 Mo. 505; Ruby v. Shain, 54 Mo. 707; State v. Saline Co. Court, 51 Mo. 350; Mathis v. Cameron, 62

Mo. 506; Ranney v. Boder, 67 Mo. 476; Wagner v.
Meety, 69 Mo. 151; Dennison v. City of Kansas, 96 Mo.
416; Verdin v. St. Louis, 131 Mo. 77; Black v. Carrell,
30 Mo. App. 641; Black v. Ross, 37 Mo. App. 250. (2)
The board of managers, although clothed with discre-
tion to determine the amount of money necessary for
the support and maintenance of county insane poor, not
exceeding two dollars and fifty cents per week per pa-
tient, has no discretion to collect more than is neces-
sary, and use the excess for purposes other than the
support and maintenance of the patients. 3 Words and
Phrases, p. 2096; St. Louis v. Weber, 44 Mo. 547. In-
ferior tribunals not only have no power by virtue of a
discretion conferred upon them, to exceed the bounds
prescribed for them by law, but, within the province
assigned them, their acts must not be unreasonable and
oppressive. Heman v. Allen, 156 Mo. 534; Corrigan v.
Gage, 68 Mo. 544; Hannibal v. Tel. Co., 31 Mo. App. 3;
City of Lamar v. Wilman, 57 Mo. App. 512; City of
Kansas v. Cook, 38 Mo. App. 664; Morse v. Westport,
136 Mo. 276; Skinker v. Heman, 148 Mo. 355; Spelling
on Injunctions, 619. (3) Section 4867, Revised Stat-
utes 1899, authorizes the board of managers to charge
the counties for "the support and maintenance of their
insane poor" not to exceed two dollars and fifty cents
per week for each patient, and the money so charged
must be used for the patients, and cannot be employed
to improve or repair the institution, or to purchase
property or utensils, which, when purchased, become
the property of the State. (4) The difficulties en-
countered in defendants' efforts to ascertain the mean-
ing to be given to support and maintenance, as used in
section 4867, vanish when we come to consider the ques-
tion of clothing. The statute says the counties shall,
in addition to the amount prescribed by the board, pay
"the actual cost of their [the patients'] clothing." Ac-
tual cost is not hard to understand. Neither is it hard
to ascertain when applied to clothing. (5) The fact that

the reports of the institution have been before the several Legislatures is not equivalent to the enactment of a law.

LAMM, J.—Abraham Davis, for himself and any other taxpayers desiring to come in, on the 7th day of September, 1905, filed a bill in equity in the circuit court of Buchanan county, directed against the judges of the Buchanan County Court, the members of the Board of Managers of the State Hospital for Insane No. 2, the treasurer thereof and its superintendent, which bill (omitting the caption) is as follows:

"Plaintiff alleges that he is a lawful citizen and taxpayer within and for Buchanan county, Missouri, and that, as such, he brings this action upon his own behalf and on behalf of all other taxpayers similarly situated; that defendants H. R. W. Hartwig, Edgar Sleppy and John H. Duncan are the legally elected, qualified and acting judges of the county court of Buchanan county, Missouri, and as such, have power and authority to issue warrants for the disbursement of the funds of said county, including payments to State Hospital for Insane No. 2 for the purpose of maintaining the insane poor of Buchanan county; that John H. Carey, C. C. Bigger, John S. Major, Samuel Gillum, and P. E. Field are the regularly appointed, qualified and acting board of managers of State Hospital for Insane No. 2 of the State of Missouri, and, as such board of managers, have control and supervision of the affairs of said institution; that defendants James Todd and and Charles R. Woodson are, respectively, the treasurer and superintendent of said State Hospital for Insane No. 2; that the foregoing officers of said institution have exclusive control of all the property, real and personal, belonging to said institution and of the funds paid thereto by the several counties maintaining insane poor therein, including Buchanan county, and in their respective capacities provide for

the disbursement of said funds and actually disburse the same.

"Plaintiff alleges further that State Hospital for Insane No. 2 is an institution created and erected by the State of Missouri for the care, confinement and treatment of persons of unsound mind, and is governed by the laws of the State of Missouri relating to asylums and eleemosynary institutions; that said institution was originally built and equipped by appropriations made by the State Legislature in the years from 1872 to 1874, and since said time the State has regularly appropriated, from time to time, sufficient funds to pay the salaries of the superintendent and the various subordinate officers and assistant physicians, and at divers times since the creation and erection of said institution, the State has, as the demand therefor became urgent, made certain appropriations for the erection and equipment of various additions and enlargements to the buildings and grounds of said institution. In addition thereto various sums of money have, as occasion required, been provided by the State for purchasing furniture and supplies and for repairing the buildings and maintaining and improving the grounds of said institution. There are, and were at the time said institution was built and equipped, in the State of Missouri, and in the territory of said State adjacent to the said institution, a great many persons of unsound mind, who are at the same time in destitute circumstances, and are therefore, public charges upon the several counties in which they reside, or have resided, and, as few if any of the counties are provided with the means and equipment for properly confining and treating such persons, the State of Missouri built and equipped said institution for the purpose of better caring for and treating such patients and provided in the law governing it that the several counties should have the right to send thereto such of their insane poor as were entitled to admis-

sion, and should pay therefor semiannually in cash, in advance, such sums for their support and maintenance as might be necessary, not exceeding two dollars and fifty cents per week for each patient, and in addition thereto the actual cost of their clothing and the expense of removal to and from said institution. In pursuance of the provisions of said law, and in the exercise of the right given by said law, Buchanan county has, by its proper authorities, sent to said institution and now maintains therein more than two hundred patients at a cost to the county and the taxpayers thereof of many thousands of dollars annually, and the money with which said county pays for the support of said patients is taken from the general revenue of the county.

"Plaintiff further states that there are two sources, and only two, from which the aforesaid institution can derive its funds, namely, by appropriations from the State treasury and by payments made by counties or persons who maintain patients in the institution; that under the law it is the duty of the State to provide from its treasury all the funds necessary to build, improve, furnish and equip the institution and prepare and maintain it as an asylum for the mentally afflicted; that under the law it is the duties of the counties, and others maintaining patients therein, to provide and pay to the institution such actual sums as may be necessary to support said patients and pay the salaries of nurses, attendants and other employees, not exceeding the sum of two dollars and fifty cents for each patient; that the money paid to the institution by the several counties maintaining insane patients therein, including Buchanan county, and by individuals who keep and maintain patients therein, is denominated the "Support Fund," and under the law said fund must be used exclusively for the support and maintenance of the patients, and cannot be diverted therefrom and used for any other purpose or purposes; that it is the duty of the board of managers to ascertain the exact cost of main-

tiaining patients in the institution and to include in
their account only those necessary items which go to·
provide food, attention and necessary running expenses.
of the institution, and exclude from their account all
other items of whatsoever character.

"Defendants John H. Carey, C. C. Bigger, John S.
Major, Samuel Gillum and P. E. Field have, as the
board of managers of the institution aforesaid, arbi-
trarily and without inquiry into the manner in which
the money is expended, charged the several counties,
including Buchanan county, for the maintenance of
their insane poor a figure largely in excess of the
amount necessary to keep and maintain said patients,
and plaintiff says that the excess over and above the
amount required to pay for the support of the said pa-
tients is diverted to uses and purposes prohibited by
law, to the great detriment of the taxpayers; that said
board, instead of examining the expenditures of the
said institution, and instead of inquiring into the neces-
sities of the patients therein, to ascertain, as the law
requires, the actual amount required to support them,
have charged the highest figure allowed by law, to-wit,
two dollars and fifty cents per week per patient, and
have required Buchanan county to pay the said price of
two dollars and fifty cents per week per patient on each
and every one of the more than two hundred patients
kept by said Buchanan county in said hospital, when
the said sum is far in excess of the actual cost of sup-
porting and maintaining said patients, and the exorbi-
tant excess constitutes a large, wasteful and unlawful
drain upon the taxpayers of the county. Large portions
of the excess paid by the counties maintaining insane
poor in the said institutions, including Buchanan
county, are expended in permanently improving
the grounds, in paying for carpenter work and
other labor required to erect new buildings for
the State; in furnishing the said buildings and
procuring other articles of a permanent charac-

ter which become the property of the State of Missouri, although the State paid nothing for them and they were purchased with money unlawfully extracted from the counties; that the excess funds procured in the manner aforesaid are openly and defiantly used by the said board in violation of law and for the purpose of furthering their own political ambitions, and the superintendent of the institution, defendant C. R. Woodson, speaking for the said board, frequently asserts in the public press of the State and especially of the city of St. Joseph, that contracts for the erection of new buildings are let piecemeal in order that the servants and employees of the institution on the regular payroll, and others employed and paid out of the support fund may perform work upon the said buildings; that by this method buildings which would otherwise cost the State $40,000 may be erected for between $20,000 and $25,000. Plaintiff avers and charges that all work so performed upon the buildings by the regular employees of the institution and by others temporarily employed, is paid for out of the support fund which is provided by the counties solely for maintaining and supporting the patients, and not for the purpose of erecting buildings and buying furniture, and the funds so used belong to the counties from which the said board has illegally exacted them, and that the State of Missouri at large has no right to have buildings erected and furniture bought for it by the several counties. The said board and the said superintendent, by using the funds contributed for the support of patients in permanently improving the buildings and grounds and in purchasing furniture and fixtures, decreases the amount required to be appropriated by the State and as appropriations from the State must be asked openly the said board and the said superintendent, desiring to deceive and mislead the people, have illegally advanced the cost of maintaining the patients in order that the excess taken from the counties

may be used for the benefit of the State at large, thus apparently justifying small appropriations and seemingly warranting the repeated statement that the institution under their efficient management is practically self-sustaining.

"Plaintiff charges the fact to be that when the several counties are thus required to pay what the State in good faith ought to pay, and which under the law it ought to pay, they and their citizens and taxpayers are unjustly taxed; that the citizens of the several counties having paid to the State their just proportion of taxes, are, when the counties in which they live are compelled to care for the insane poor in the said hospital, again taxed by the State of Missouri, and plaintiff avers that the taxpayers of Buchanan county are especially burdened in this regard because the indigent mentally afflicted and their friends, knowing that the aforesaid institution is situated in Buchanan county, bring them to said county and acquire or pretend to acquire for them a residence, and the citizens of said county being in danger of violence from the said afflicted, the authorities are compelled for the protection of the community to confine them in said hospital at the expense of the county; that for this reason alone the number of insane poor in said institution supported by the taxpayers of Buchanan county is, proportionately, largely in excess of any other county, being nearly one-sixth of the total population of said institution, while the population and taxable wealth of said county as compared to the population and taxable wealth of all the counties maintaining insane poor in said institution is many times smaller than one-sixth, and when the money paid by said county and designed solely for the support of its insane poor is diverted to the State at large the citizens of said county are discriminated against and are required to pay an unjust and unlawful tax to the State of Missouri.

"Plaintiff avers that during the biennial period

ending January 1, 1905, the said board of managers and said superintendent unlawfully expended of the funds contributed by the counties, including Buchanan county, more than seventy-five thousand dollars (a sum far in excess of the total appropriations made by the Legislature for the same period), all of which, if necessary to be expended at all, should have been provided by the State of Missouri.

"In addition to the foregoing, plaintiff says that during the biennial period ending the first day of January, 1905, there was expended out of the support fund one hundred and twenty-seven thousand, seven hundred and eighty-four dollars and fifty-seven cents for wages; that said sum is out of all proportion to the needs of the patients and plaintiff avers the fact to be that said sum included practically all the money paid for labor and wages in erecting the buildings and permanent improvements to the said institution during that period; that all wages for labor upon the buildings and grounds, instead of being paid out of the support fund, should have been paid out of the appropriations made by the State, inasmuch as the buildings when completed belong to the State. There are now in progress of erection certain buildings and permanent improvements to said institution for which appropriations have been made by the Legislature, but the said board of managers and the said superintendent, instead of using said appropriations for the purposes designed, are paying, as plaintiff is informed and believes, the wages for the labor performed upon said improvements out of the support fund, greatly to the detriment of the taxpayers, including the taxpayers of Buchanan county.

"The law prescribing the terms upon which the indigent insane of the several counties may be admitted to said institution provides that the counties shall pay, in addition to the price per week per patient prescribed by the board of managers, the actual cost of the clothing

furnished to the respective patients. The said board of managers and the said superintendent, instead of complying with the foregoing law, furnish the clothing to the patients and render bills to the several counties, including Buchanan county, for sums largely in excess of the actual cost of said clothing. The said board and the said superintendent, as plaintiff is informed and believes, maintains sewing rooms, equipped with money taken from the support fund. Seamstresses are employed and placed in charge of said sewing rooms whose salaries are paid out of the support fund. Large quantities of material are purchased from time to time and paid for out of the same fund. When a female patient is in need of a garment it is prepared for her in the said sewing room from materials on hand purchased as aforesaid and delivered to her. Instead, however, of finding the actual cost thereof, as required by law, and rendering a bill to the county maintaining the patient for said sum, the county maintaining said patient is arbitrarily charged a price in many instances more than double the actual cost of the garment. In the same manner the shoes of both male and female patients are repaired in shops maintained by the support fund and by employees paid from the same fund. The price of all repairs, instead of being calculated at actual cost, is arbitrarily fixed at more than double the actual outlay thereon, and bills rendered for the excessive prices. In the case of men's clothing, large quantities are frequently purchased at very low prices and instead of ascertaining the exact cost of each garment and rendering bills therefor, the price is raised to the counties and they are required to pay the excess. By the means aforesaid the said board of managers and the said superintendent unlawfully procure from the taxpayers of Buchanan and other counties large sums of money which should be left with the taxpayers.

"Plaintiff further charges that out of the funds thus illegally collected the said board of managers per-

mits and approves lavish and wholly unnecessary expenditures. The superintendent keeps and maintains out of the funds of said institution a large number of horses which are the private property of said superintendent, and which are stabled, fed and groomed at the expense of the institution out of the money paid by Buchanan and other counties to be devoted to the care and treatment of the unfortunate. Each of the assistant physicians also owns one or more horses which are likewise fed and cared for by the institution out of the same fund. The superintendent, in furtherance of his political ambition, frequently entertains his political friends and acquaintances, renders bills therefor to the board of managers, all of which are approved and allowed, contrary to law, out of the fund provided for the support of the inmates. The superintendent likewise renders to said board his bills for stamps and stationery, large portions of which are used by him in conducting a large personal and political correspondence, and said bills are approved and allowed by said board and paid for from the funds provided for the support of the unhappy inmates.

"Plaintiff had hoped that through the executive administration under authority of those responsible for the conduct of the government, these gross abuses which have been practiced for years, would be corrected, promises of which have so loudly been made, and that citizens would be afforded a remedy without being compelled to invoke the extraordinary process of the courts, but, so it is that, although new officials have recently been elected, these abuses continue with more boldness and presumption than ever before, and will continue without abatement or correction, unless restrained and prevented by the order and decree of this court.

"Wherefore, plaintiff prays that any and all taxpayers of Buchanan county who desire to do so may be permitted to join with him in this petition; that the

judges of the county court of Buchanan county be restrained from allowing, ordering or providing for the payment of any requisitions of the board of managers of State Hospital for Insane No. 2, arbitrarily and illegally made by them and not based upon an estimate of the actual cost of the support and maintenance of the insane patients of said county committed to said hospital, and in addition thereto not exceeding the actual cost of clothing for such patients, and that the said defendants, the board of managers and superintendent, be enjoined and restrained from including in any requisition they may make for the support of said insane patients anything but the actual cost of support and maintenance of such insane patients, and that they exclude from such requisition any and all moneys which may be designed by them for purposes other than the support and maintenance of the said insane patients, and that they also be enjoined and restrained from rendering bills for clothing for such patients in excess of their actual cost, and that said board of managers be required by the mandatory order of this court to base their requisitions upon an estimate of the actual cost of maintenance and support of said insane patients, excluding therefrom any anticipation of funds to be used in permanently improving the institution, buildings, grounds, furnishings and fixtures, and that the treasurer of said board, defendant James Todd, be restrained and enjoined from paying any warrant drawn upon him as treasurer, by authority of said board in violation of law as hereinbefore alleged, and will the court grant such other and further relief in the premises as equity and good conscience may require.''

All the defendants file answer except the members of the county court of Buchanan county, who stood mute. That answer is as follows:

''Now come the defendants John H. Carey, C. C. Bigger, John S. Major, Samuel Gillum, P. E. Field, James Todd, and Charles R. Woodson, and for their

separate answer, admit that the said John H. Carey, C. C. Bigger, John S. Major, Samuel Gillum and P. E. Field, constitute the regularly appointed, qualified and acting board of managers of State Hospital for Insane No. 2 of the State of Missouri, and that defendants James Todd and Charles R. Woodson are respectively the treasurer and superintendent of said Hospital for Insane No. 2 and as such have exercised the powers and duties prescribed by the laws of the State of Missouri and the by-laws of said institution enacted in accord with the laws of the State of Missouri.

"Admit that the defendants, the board of managers, in legal session, after full and mature consideration, did decide that the sum of two and fifty one-hundredths dollars per week was a reasonable and necessary charge per patient to the various counties for the care, maintenance and support of patients sent to said hospital by said counties, and, as has every other like institution in the State, accordingly rendered bills for such charge to the various counties, and the board does now state that said charge is a reasonable and necessary charge.

"And the said board of mangers, the treasurer and superintendent aforesaid, further answering state, that in all things pertaining to their duties under the law and under the by-laws of said institution, either in the collection or disbursement of the funds of said institution and in the management, control and maintenance of said institution and all property belonging thereto, as well as the care, control, treatment and maintenance of said patients, they have exercised their best judgment and have fully and legally performed their duty as such officers in accordance with the provisions of the laws of the State of Missouri, and the by-laws of the intitution enacted in accordance with the laws of the State, always, as far as possible, using such means and methods as the best modern authority and human ex-

perience has shown to be of benefit to the unfortunate patients.

"And further answering, these defendants deny each and every allegation in said petition contained not herein specifically admitted.

"And having fully answered, defendants ask to be discharged with their costs."

A reply was considered filed.

At the opening of the trial plaintiff introduced a witness and thereupon defendants objected to the introduction of any testimony, as follows:

"Mr. Vories: We desire to make the general objection at this time, so that it will be of record—we object to the introduction of any evidence under this petition on the ground: First, it does not state facts sufficient to constitute any cause for relief; and, second, because there is nothing charged to be contemplated under the petition at this time that would have been an infraction of the law.

"The Court: What is the second one?

"Mr. Vories: The petition states facts that have been completed, or have occurred long ago, but they don't state that anything is threatened or that is to be done in the future or now to be done that is an infraction of the law."

While in their brief proper, appellants' learned counsel do not insist that the petition does not state a cause of action, yet in their brief in reply they do suggest that infirmity.

On a trial the following decree was entered:

"Now on this 24th day of January, 1906, and at the regular January term, 1906, of this court, come again the parties plaintiff and defendants and the court having previously heard the evidence and argument of counsel, and being fully advised in the premises, finds that the allegations of the petition are true and that the plaintiff is entitled to the relief prayed.

"It is, therefore, ordered, adjudged and decreed

that defendants John H. Carey, C. C. Bigger, John S. Major, Samuel Gillum and P. E. Field, the board of managers of State Hospital No. 2, and C. R. Woodson, superintendent of said hospital, be and they are hereby perpetually enjoined and restrained from including, in any estimate they may make of the sums they deem necessary for the support and maintenance of Buchanan county insane poor, as well as in any bills that may be presented to said county by them, anything but the actual cost of support and maintenance of such insane poor, and that they exclude from such estimate and bills any and all moneys which may be designed by them for purposes other than the support and maintenance of said insane poor; and that they be permanently enjoined and restrained from using any of the funds contributed by Buchanan county and paid to them for the support of its insane poor, in erecting buildings, or in repairing any part or portions of any buildings, or in permanently improving the buildings and grounds; in furnishing the buildings or offices, or in procuring other articles or fixtures for said institution; and that they be and are hereby further enjoined and restrained from rendering bills for clothing furnished to the insane poor of Buchanan county in excess of the actual cost of said clothing. And the said James Todd, treasurer of the said State Hospital No. 2, be and he is hereby likewise restrained and enjoined from paying or causing to be paid, receiving or causing to be received from Buchanan county any moneys the aforesaid board of managers are hereinbefore enjoined and restrained from making requisition for or expending.

"And it is further ordered, adjudged and decreed that the defendants constituting the county court of Buchanan county be and they are hereby perpetually restrained and enjoined from allowing, ordering or providing, out of the county revenue, for the payment of any requisition of the aforesaid board of managers and superintendent made by them which includes any

of the items they are hereinbefore prohibited from including in their estimate or any item not constituting a part of the actual cost of the support and maintenance of the insane poor or any of them of said county committed by said court to said hospital, or any sum for clothing of such patients or any of them in excess of the actual cost thereof.

"It is further ordered that the costs of the trial of this cause be taxed against the defendants who have filed answer and that all other costs be taxed against all the defendants, and that plaintiff recover and have execution for his costs herein expended accordingly."

In due time defendants filed the usual motions looking to an appeal, saved exceptions to the adverse rulings of the court thereon, and brought a voluminous record here.

In briefs filed, as well as in oral argument, the official management for the last few years of Hospital No. 2 for the Insane is criticised on one side and defended on the other, and the record is relied upon by learned counsel as furnishing data for both this criticism and defense.

It having been urged upon us that the injunction impedes the administration of the hospital, the cause, by stipulation of counsel and by the grace of this court, was advanced and submitted, and we are invited on all hands to deliver a judicial pronouncement upon that management. An examination and analysis of the record and of the bill itself disclose that every substantial allegation in the bill, *ex industria*, is reminiscent in character and directed to past events, and that the evidence follows the trend of these allegations. Not a date, a fact or allegation, fairly construed, pertains to the future. Though no complaint is made of a threatened and impending injury, yet, singular enough, the life of the bill is injunctive relief. So the chancellor, *nisi*, understood, and, so understanding, he undertook to grant such relief in general terms, arising to the dig-

nity of admonition rather than to the finding and establishment of concrete facts, pertaining to any impending action of defendants. The decree shows, for itself, that the learned court found the issues for the plaintiff. But what issues? Of course, the issues made by the pleadings. In other words, the court was not satisfied with the past management of Hospital No. 2, and the logic of the decree is: You have done, in my opinion, thus and so; I do not know what you threaten to do, or will do hereafter, and there is nothing pending at this time that you contemplate doing, but I admonish you to quit—to do so no more.

On a bill for injunction alone, we may not sit as a committee of investigation to rip up completed matters and adjudicate upon whether the past bookkeeping, the past adjustment of funds, the past expenditures, the past management, the past estimates of officers, charged with a high statutory discretion and armed with flexible power in the administration of a noble charity, have been good or bad, praiseworthy or blameworthy. We conceive such things to be beyond the pale of judicial function, on such bill as this, and we decline to assume the role of Christopher Columbus—to embark for a voyage on an unknown sea of jurisprudence in hope of sighting land in some direction or other.

That an injunction will not issue on a bill directed to acts gone by, that the strong arm of a court of equity, symbolized in an injunctive writ, is not corrective of past injuries, is fundamental. [2 Spelling on Inj. (2 Ed.), sec. 1018; 1 High on Inj. (4 Ed.), sec. 23; Carlin v. Wolff, 154 Mo. l. c. 543.]

By statute, requisitions are made on county courts for six months' pay in advance for indigent county patients in State hospitals. These estimates, on the theory of the law, are the product of the trained, technical and discretionary judgment of the board of managers. In a given instance, they might be somewhat too high, or, in a given instance, they might be somewhat

too low.   Whether it is within the right of a taxpayer, if such requisition were actually pending before a county court, to question the rate of $2.50 per week for the support and maintenance of each of such patients for six months in advance, or whether such county court may question it, or whether the power and duty of making such estimate are lodged alone with the board of managers, or whether "support and maintenance," *ex vi termini,* cover elements of wear and tear on furniture, etc., amusement, diversion, labor, protection against cold and wet, protection against injury, medicines, salaries for nurses, guards and chaplains—expenditures in shops and for agriculture pertaining to the hospital, or whether any moneys contributed by Buchanan county may be legally used in temporary or permanent betterments of the grounds and buildings of that hospital (the property of the State of Missouri), i. e., whether the construction placed on the verbiage of the statutes by the learned counsel for respondent, or by the learned counsel for appellants, be the true one—are one and all questions we decline to decide in this case, because to decide them on a petition stating no cause of action would be mere *obiter,* in our opinion.

Moreover, it is conceded there is no evidence that Abraham Davis, the respondent, was a taxpayer of Buchanan county, and, therefore, the case does not come within the rule laid down in Newmeyer v. Railroad, 52 Mo. 81, and cases cited, also in 1 Spelling on Injunction (2 Ed.), section 614, relating to the right of a taxpayer to intervene and prevent illegal expenditures of money raised by taxes, or the imposition of illegal burdens on the people.

The objection to the introduction of any testimony should have been sustained.   The petition will not support a decree, on any theory of the law, and, for this reason, the cause is reversed.

*Brace, C. J., Gantt, Burgess, Valliant,* and *Fox, JJ.,* concur; *Marshall, J.,* concurs in all that is said, but

is further of the opinion that even if the bill charged that all of the acts alleged were impending as a threatened injury, yet the bill would not state a cause of action.