227 S.W.2d 494 (1950)
HURTGEN et al.
v.
GASCHE et al.
No. 27900.
St. Louis Court of Appeals. Missouri.
February 21, 1950.
Motion for Rehearing or to Transfer to Denied March 24, 1950.
Redick O'Bryan, St. Louis, R. E. Kleinschmidt, Hillsboro, for appellants.
Dearing & Matthes, Hillsboro, M. C. Matthes, Hillsboro, for respondents.
Motion for Rehearing or to Transfer to Supreme Court Denied March 24, 1950.
McCULLEN, Judge.
This suit was brought by appellants as plaintiffs against respondents as defendants for an injunction to restrain and enjoin defendants from levying and collecting an increase of school taxes of 50¢ on the $100.00 valuation in Consolidated School District No. Three of Jefferson County, Missouri. The trial court sustained the separate motions of the individual defendants to dismiss the petition of plaintiffs on the ground that the petition did "not state facts entitling plaintiffs to injunctive relief or to any relief" against the defendants. The defendant School District did not file any *495 motion or pleading. Plaintiffs having refused to plead further, the court rendered final judgment and dismissed the proceedings. After an unavailing motion for a new trial plaintiffs appealed to the Supreme Court, but that court held that it did not have jurisdiction and transferred the cause to this court.
Plaintiffs, sixty-three in number, alleged in their petition that they are all resident taxpaying citizens of Consolidated School District No. Three of Jefferson County, Missouri, and bring this action on behalf of themselves and all others similarly situated who desire to join. Six of the named defendants are alleged to be the members of the Board of Directors of said School District. The three other individual defendants named in the petition are alleged to be the duly elected, qualified and acting Clerk of the County Court, Collector of Revenue, and Superintendent of Schools, respectively, of said County. The School District is also named as a defendant.
Plaintiffs' petition further alleged that under Section 10347; page 1630, Laws of Missouri 1945, Mo.R.S.A. § 10347, it will be the duty of said Board of Directors on or before the 15th day of May, 1948, to "forward to the County Superintendent of Schools an estimate of the amount of money to be raised by taxation for the ensuing school year, and the rate required to produce said amount, specifying by funds the amount and rate necessary to sustain the school or schools of said district for the time required by law or authorized by the qualified voters of the district, to meet principal and interest payments on the bonded debt of the district, and to provide such funds as may have been ordered by the qualified voters of the district for other legitimate district purposes, including the purchase of school building sites, buying or erecting school buildings, repairing and furnishing such buildings, and providing foot bridges across running streams"; that on receipt of the estimates of said School District it will become the duty of said County Clerk, unless restrained by law, to assess the amount so returned on all taxable property, real and personal, in said District, as provided by Section 10395, page 1631, Laws of Missouri, 1945, Mo.R.S.A. 10395, and it will become the duty of said Collector of Revenue, unless restrained by law, to collect said taxes on real and personal property in said School District, including property of plaintiffs.
The petition of plaintiffs further alleged that the defendant Directors of said School District have threatened to and are about to certify to said Superintendent of Schools and to said County Clerk a tax rate of 50¢ in excess of $1.00 on the $100.00 valuation on all taxable property in said School District on account of an irregular and void election held at the school building in said School District on Thursday, April 29th, 1948, which said purported election was void and of no effect because legal notice thereof was not given as provided by Section 10358, pages 1630 and 1631, Laws of Missouri, 1945, Mo.R.S.A. 10358, and Section 10418, R.S.Mo.1939, Mo.R.S.A.; that the only purported notice of said special election was published in the Jefferson County Record, a weekly newspaper published in said School District in the issues of April 8th, 15th and 22nd, 1948, and was as follows:
"Notice of Special School Election "In compliance with Section 10843, R.S. Mo., 1939 [Mo.R.S.A.], notice is hereby given to the qualified voters of Consolidated School District No. 3 of Jefferson County, Hillsboro, Mo., that a special election of said district will be held at the Hillsboro School Building, Hillsboro, Mo., within said district, on Thursday, the 29th day of April, 1948, beginning at 7 o'clock a. m., and closing at 6:00 o'clock p. m. of said day, to vote upon the following proposition:
"To vote a tax rate of 50¢ in excess of $1.00 on the $100.00 valuation.
"Done by order of the Board of Education of Consolidated School District No. 3, this 7th day of April, 1948.
"Clara Schubel,
Secretary,
Board of Directors,
Cons. School Dist. No. 3."
Plaintiffs further alleged in their petition that said purported election was void *496 because said notice did not specify, as required by said Section 10358, the purpose or purposes for which said increase of taxes was required and also for the reason that it did not specify the number of years for which each proposed excess rate is to be effective; that said notice was void for the further reason that it did not recite that said increase became necessary in the judgment of the Board of Directors of said School District or that a number equal to 10% or more of the qualified voters of said District had petitioned said Board in writing for said increase as provided in said Section 10358.
Plaintiffs further alleged in their petition that said purported notice and special election were void for the further reason that the same proposition was voted on at the annual election in said School District held on April 6, 1948, at which time more than one-third of the qualified voters of said District voting on the proposition voted against said proposed increase, and that said Board of Directors were without authority to call said election for the same purpose within twenty-three days of said annual meeting, particularly without a petition therefor being presented by 10% or more of the qualified voters, as provided for in said Section 10358, and without specifying the particular purpose for which said tax increase was needed and desired.
The petition of plaintiffs further alleged that said special election was void for the further reason that 50¢ increase on the $100.00 valuation would exceed the amount allowed by the Constitution of Missouri, towit: "five per centum of the value of taxable tangible property," as provided in Article VI, Section 26(b), Constitution of Missouri, 1945, Mo.R.S.A.; that it was unnecessary to have said tax increased in said District for said year, even if permitted by the Constitution, as the same would cast an unnecessary burden on plaintiffs and other taxpayers of said District; that the existing rate of taxation for school purposes, to-wit: $1.05 on the $100.00 valuation, if properly managed, would provide sufficient funds for the proper operation of said school.
Plaintiffs' petition further alleged that said Board of Directors in August 1946 and July 1947, "knowingly, unlawfully and wrongfully caused and permitted the school grounds and premises to be used for horse show purposes, at which time a large number of gambling devices were operated and permitted to be operated on said school grounds and an admission fee was charged these plaintiffs and other taxpayers of said District and none of the proceeds derived therefrom, or even the admission to said school grounds, was used for school purposes in any respect whatsoever, all in violation of law"; that in April 1948, and shortly after the proposition to increase said tax rate, as aforesaid, was defeated at the regular school election and before said April 29, 1948, the defendant Directors deliberately, wilfully, wrongfully and unlawfully destroyed or caused to be destroyed about 35 cases of condensed milk belonging to said School District and purchased with school funds for the purpose of supplying lunches to the students of said School District; that the purported notice for said special election recited that said notice was given in compliance with Section 10843, R.S.Mo.1939, Mo.R.S.A., which section pertains solely to the Missouri State Military School.
The petition prayed that the defendants and each of them be restrained and enjoined from certifying said tax increase, from assessing the same and from collecting or attempting to collect said tax against the property of plaintiffs, and for such other relief as to the court might seem just and proper.
Defendants did not file any answer but, as heretofore stated, filed separate motions to dismiss plaintiffs' petition. No evidence was introduced. On September 16, 1948, plaintiffs filed a motion for judgment on the pleadings, which was overruled by the court on that date. On the same day the motions of defendants to dismiss were submitted to the court and taken under advisement. On October 25, 1948, defendants' motions to dismiss were sustained by the court. *497 We are confronted at once with the question as to whether or not this case is now a moot case. The petition of plaintiffs was filed on May 11, 1948, to enjoin and restrain defendants from performing certain acts which plaintiffs' petition alleged it was defendants' duty under the law to perform. That duty required the defendant members of the Board of Directors of the School District to forward to the County Superintendent of Schools, on or before May 15, 1948, an estimate of the amount of money to be raised by taxation for the ensuing school year and the rate required to produce said amount. Plaintiffs' petition alleged that it would then become the duty of the County Clerk to assess the amount so returned on all taxable property, real and personal, in said District and the duty of the Collector of said County to collect said taxes on said real and personal property. No restraining order or temporary injunction was asked for by plaintiffs, nor did the court make any such order or issue an injunction of any kind at any time to prevent defendants from performing said duties.
It will be noted that plaintiffs alleged that defendants were required by law to perform their duties of certifying and assessing the taxes "on or before the 15th day of May, 1948" and that defendants were about to perform said duties. It will also be noted that the court's judgment dismissing the proceedings was entered on October 25, 1948, on which date the time for the performance of defendants' said duties had long since passed and there had never been any order entered or action taken by the court to prevent defendants from certifying, assessing and later collecting the taxes in question in accordance with said duties in the usual manner under the law. The mere filing and pendency of plaintiffs' petition for an injunction did not interfere with defendants' obligation to proceed with the performance of their duties.
Even if we should hold that the trial court erred in dismissing the proceedings, and that the cause should be remanded with directions to overrule defendants' motions to dismiss, further procedure would be a futile and useless attempt to restrain defendants from doing certain acts at a particular time, namely, May 15, 1948, which the passage of time has now made it absolutely impossible for the court to restrain them from doing. An injunction issued at this time would be an absurdly useless procedure. It could not restrain defendants from performing acts which plaintiffs themselves say defendants were bound by law to perform on or before May 15, 1948.
It is true that there is nothing in the record to show whether defendants did perform the duties which plaintiffs sought to restrain them from performing, but it is crystal clear that no injunction or court order issued now could have the slightest effect upon defendants' acts if they did perform their duties in accordance with the law "on or before the 15th day of May, 1948," by certifying, assessing and later collecting the taxes in question. Furthermore, there is nothing in the record to show that defendants did not levy, assess and collect the taxes in accordance with their duties at the time required by the law. While it is not necessary for us to base our decision on any "presumption" that defendants did perform their duties according to law, we certainly cannot "presume" that they did not do so. There is nothing whatsoever in the record to warrant the view that they failed to perform their duty at the time required by law. If any presumption is applicable, it would be in favor of the view that the defendants as public officers did perform their duties at the time and in the manner required by law. This would be in accordance with the general rule as stated in 20 Am.Jur., Evidence, Section 170, page 174, as follows: "In the absence of any proof to the contrary, there is a very strong presumption embodied in the maxim, `omnia praesumuntur rite esse acta,' that public officers have properly discharged the duties of their office and performed faithfully those matters with which they are charged."
Neither court orders, nor injunctions, nor any human agency can prevent the happening of things that have already occurred. *498 Time does not stand still. In the language of a famous radio program: "Time Marches On." The utter futility of attempting to restrain acts that have already occurred, or that are impossible of future occurrence because of the passage of time, has been clearly recognized and declared by our Supreme Court in a carefully considered case wherein the authorities were reviewed somewhat at length.
In Fugel et al. v. Becker, Secretary of State, Mo.Sup., 2 S.W.2d 743, plaintiffs therein sought to enjoin the Secretary of State from contracting for the printing by newspapers throughout the state of the text of certain initiative proposals. A temporary injunction had been granted by the trial court. Later a demurrer to the petition was filed by the defendant and overruled by the court. The defendant stood upon his demurrer and refused to plead further, and on January 22, 1927, judgment was entered by the trial court on the petition making the injunction permanent and the defendant appealed. The Supreme Court en banc held that the question involved therein had become a moot one. In that case the court said:
"In 32 Corpus Juris, 45, the general rule is stated as follows:
"`Since the purpose of an injunction is not to afford a remedy for what is past but to prevent future mischief, not being used for the purpose of punishment or to compel persons to do right but merely to prevent them from doing wrong, rights already lost and wrongs already perpetrated cannot be corrected by injunction, and the party aggrieved must seek some other remedy for redress, which is ordinarily an action at law for damages.'
"Spelling on Extraordinary Remedies (2d Ed.) § 1018, announces the general rule in the following language:
"`A hearing on an injunction bill cannot be had after the act has been done which it is the sole purpose of the bill to restrain; the remedy for any consequent injury is to be had, if at all, at law.'
* * * * * *
"In Davis v. Hartwig, 195 Mo. 380, loc. cit. 398, 94 S.W. 507, 512, Lamm, J., said:
"`That an injunction will not issue on a bill directed to acts gone by, that the strong arm of a court of equity, symbolized in an injunctive writ, is not corrective of past injuries, is fundamental.'
"In Carlin v. Wolff, 154 Mo. 539, loc. cit. 543, 51 S.W. 679 [55 S.W. 441], Sherwood, J., said:
"`It is familiar and well-settled law that a court of equity will not attempt to restrain the doing of any work which has already been accomplished, and for obvious reasons.'
"The rule that an injunction will not be granted to restrain the doing of an act which has already been done is well settled and is universally recognized. If an act already accomplished cannot be enjoined, certainly an act which could not possibly be accomplished, because the time is forever passed when it could be accomplished, may not properly be enjoined.
"The allegation of the petition was that appellant was threatening and about to enter into contracts for printing initiative and referendum proposals to be submitted at the general election in 1926. When the injunction was made permanent on January 22, 1927, the general election of 1926 was history, and the time was forever passed when appellant could possibly have entered into such alleged contracts. If the court could not enjoin the commission of an act already committed, for an equally strong, or even stronger, reason, it was improper to enjoin the commission of an act which by lapse of time had been rendered impossible of commission at all.
"When the general election of 1926 passed into history, the question of the legality of the contracts, which it was alleged appellant was about to make, became moot. The court could not properly enjoin the future commission of an act which could not possibly be committed after the rendition of such judgment." Fugel et al. v. Becker, Secretary of State, Mo. Supp., 2 S.W.2d 743, 744.
*499 We are satisfied from our examination of the record herein and a consideration of the law as declared in Fugel v. Becker, supra, that this case is now a moot case. The question therefore, presented is what disposition shall be made of it. Again, we have recourse to the carefully considered opinion of our Supreme Court en banc in Fugel v. Becker, supra. In that case the Supreme Court said:
"The general rule in respect to the duty of an appellate court to decide moot questions is thus stated in Corpus Juris:
"`It may be stated as a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction. In the absence of such a controversy, the appeal or writ of error will either be dismissed or the cause will be remanded with directions to vacate the judgment and dismiss or grant other appropriate relief.' 3 C.J. 357.
"See, also, 2 R.C.L. § 145, p. 169, where it is said:
"`When, pending the appeal, the circumstances change to such an extent that the appeal involves merely a moot question, it will, as a general rule, be dismissed.'
"Corpus Juris further amplifies the rule as follows:
"`Hence it is not within the province of appellate courts to decide abstract, hypothetical, or moot questions, disconnected from the granting of actual relief, or from the determination of which no practical relief can follow, and, although there are decisions to the contrary, it is held in a number of jurisdictions that the fact that the questions involved are of public importance does not change the rule. The appellate court may receive proof or take notice of facts appearing outside the record for the purpose of determining the moot character of a question presented to it.' 3 C.J. 358." Fugel v. Becker, Mo. Sup., 2 S.W.2d 743, 746.
While the case now before us was pending in the Supreme Court the defendants filed a motion to dismiss the appeal, setting up various grounds therein for such dismissal. In view of the conclusion which we have reached, it is unnecessary for us to pass specifically upon said motion.
Inasmuch as we find that the case has become moot, it is our plain duty under the authority of the case of Fugel v. Becker, supra, to dismiss the appeal. It is so ordered.
ANDERSON, P. J., and HUGHES, J., concur.