Harold HARRIS, et al.,
Plaintiffs–Respondents,

and

David L. Campbell and Estate of Edward W. Fredrickson,
Petitioners–Respondents,

and

David L. Campbell,
Petitioner–Respondent,

v.

UNION ELECTRIC COMPANY,
Defendant–Appellant,

and

Centerre Trust Company, formerly St. Louis Union Trust Company,
Defendant–Appellant.

No. 70374.

Supreme Court of Missouri,
En Banc.

Feb. 14, 1989.

As Modified on Denial of Rehearing
March 14, 1989.

---

Lawrence G. Crahan, Francis X. Duda, Jordan B. Cherrick, Ann E. Buckley, David

S. Slavkin, Theodore R. Carter, St. Louis, for defendant-appellant.

David L. Campbell, John J. Campbell, William J. Raack, St. Louis, for plaintiffs-respondents.

ROBERTSON, Judge.

This appeal is the fourth in a series of class action suits involving Union Electric Company and holders of its Series 2005 Bonds. The litigation spans the last decade and bears a complex procedural pedigree. In April, 1978, Union Electric announced that it planned to redeem approximately $50,000,000 of the $70,000,000 in Series 2005 Bonds originally issued in March, 1975. Believing the bonds were sold with solid "call protection" for ten years, several bondholders filed suit seeking declaratory, injunctive and monetary relief for a class of bondholders. As a result of the suit, Union Electric halted its redemption plan.

The present action is a consolidated appeal by defendants-appellants Union Electric Company and Centerre Trust Company. The trial court granted summary judgment in favor of the named plaintiffs and the class of bondholders they represent.[1] The order enjoined Union Electric from redeeming the Series 2005 bonds at par value from money deposited with its trustee, Centerre. The trial court also reaffirmed a prior award of attorneys' fees and expenses, plus interest to petitioners, David Campbell and the Estate of Edward W. Frederickson (plaintiffs' counsel) and awarded additional attorneys' fees to plaintiffs' counsel. The Court of Appeals, Eastern District, affirmed.

We granted transfer to consider whether a prior recovery of money damages in a class action bars subsequent injunctive relief for a nearly identical class. We have

jurisdiction. Mo. Const. art. V, § 10. Reversed and remanded with directions to enter summary judgment in favor of Union Electric and for such other proceedings as may be consistent with this opinion.

I. Procedural History

On March 19, 1975, Union Electric Company offered for sale $70,000,000 of its First Mortgage Bonds, 10½ Series due March 1, 2005. The bonds were issued under the terms of a supplemental indenture with Union Electric as grantor and St. Louis Union Trust Company (now Centerre Trust Company) as Trustee. The bonds had a par value of $1,000, and were sold by a syndicate of eighty-eight underwriters who offered the bonds to the public. By April 9, 1975, all of the bonds were sold. The named plaintiffs in this action were original purchasers of the bonds.[2]

Following the initial sale, the market value of the bonds fluctuated, adjusting for the rise and fall of interest rates. In late 1976, long-term bond yields began to fall. Utility companies, forced into the debt market in 1974 and 1975 in the face of soaring interest rates, were tempted to seek early retirement of their high-yield bonds through redemption or refunding. Union Electric began investigating the possibility of a redemption of its Series 2005 bonds.

On April 11, 1978, Union Electric publicly announced its plan to call $50,000,000 of its Series 2005 bonds. To implement its plan, Union Electric incurred nearly $50,000,000 in short-term debt at an interest rate below 10.6 percent. The cash was deposited with the mortgage trustee, Centerre Trust Company, and credited to Union Electric's Maintenance Fund and Improvement Fund. Union Electric intended to redeem the short-term debt by a private placement of a new

---

1. The trial court designated its judgment final for purposes of appeal. *See Speck v. Union Electric Co.,* 731 S.W.2d 16 (Mo. banc 1987). Counts II and III of plaintiff's petition, consisting of damage claims for additional legal fees, expenses and punitive damages remain pending in the circuit court.

2. Harold Harris purchased twelve bonds at 100 percent of par or a total price of $12,000. Continental Casualty Company purchased 1,000 bonds at a total price of $1,001,000. National Fire Insurance Company of Hartford purchased 3,000 bonds at a total price of $3,014,687.50. In their Third Amended Petition, the corporate plaintiffs indicate that they now hold only 5 bonds each.

long-term mortgage bond issue at an interest rate of 9.35 percent.

Union Electric directed its trustee to redeem the Series 2005 bonds at 100 percent of face value. Centerre refused to do so without judicial approval because it questioned the legality of the plan to call the bonds through the Maintenance Fund. On May 9, 1978, the plaintiffs instituted their state court action against Union Electric and Centerre. After learning of the pending lawsuit, the prospective purchasers of the replacement bonds refused to complete their purchase of the bonds. On June 19, 1978, Union Electric abandoned its redemption plan and withdrew the cash from the Maintenance Fund.

### Harris I [3]

Within a month after Union Electric announced its redemption plan, plaintiff Harold Harris filed suit seeking relief for himself and all other individuals holding the Series 2005 bonds. Harris maintained that the 1975 Indenture expressly precluded redemption of the bonds from funds obtained at an interest cost less than 10.6 percent for the first ten years, until March 1, 1985. Furthermore, Harris claimed that the Indenture prohibited redemptions from the Maintenance Fund and Improvement Fund, and, if the redemption was permitted, federal securities laws would be violated. In sum, Harris argued that bondholders like himself bought the bonds in reliance on solid call protection on the bonds for ten years.

Soon after Union Electric announced it had abandoned its redemption plan, Continental Casualty Company and National Fire Insurance Company of Hartford came forward as bondholders and were added as named plaintiffs in the suit originally filed by Harris. With the consent of the parties, the trial court certified the claims as a Rule 52.08(b)(1) and (b)(2) class action. The class was defined as all holders of the Series 2005 Bonds as of November 21, 1978 (the date of the certification order) and their transferees.

The plaintiffs' petition contained eleven counts. It sought a declaration of plaintiffs' rights under the indenture and an injunction prohibiting the redemption plan contemplated by Union Electric. Additionally, plaintiffs requested monetary damages on the basis of statutory and common law violations. The trial court severed the plaintiffs' claims for declaratory and injunctive relief for separate trial.[4]

In their motion for summary judgment, plaintiffs argued that Union Electric was prohibited by the indenture from proceeding with the redemption plan. However, if Union Electric could redeem, plaintiffs argued that the selling prospectus failed to adequately disclose the redemption features of the Series 2005 bonds.

In December of 1979, the trial court granted the plaintiffs' motion for summary judgment.[5] The court held that Union Electric's redemption plan was not permitted under the terms of the indenture and issued an injunction prohibiting redemption on the terms proposed by Union Electric. The court did not address the prospectus disclosure issue.

On June 16, 1981, the Court of Appeals, Eastern District, reversed, characterizing the language of the indenture as unambiguous and permitting Union Electric to call the bonds by special redemption as it had planned. The Eastern District remanded the case with instructions to enter partial

---

**3.** Our decision in this case relies in part on the law of the cases found in prior reported appellate decisions concerning this litigation. In the interest of brevity, these prior decisions will be referred to as *"Harris I"*, Harris v. Union Electric Co., 622 S.W.2d 239 (Mo.App.1981), *"Harris II"*, Harris v. Union Electric Co., 685 S.W.2d 607 (Mo.App.1985); and *"Harris III"*, Harris v. Union Electric, 787 F.2d 355 (8th Cir.), *cert. denied*, 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986).

**4.** In essence, the trial court consolidated the first four counts of plaintiffs' petition. However, Count III alleging violations of Rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), was dismissed by plaintiffs in recognition of exclusive federal jurisdiction over such claims.

**5.** After the trial court entered judgment in favor of the class, it directed that the class be given notice of the judgment in its favor. This is the only notice ever directed to any class by the state courts.

summary judgment in favor of Union Electric with respect to its rights under the indenture.[6]

### Harris II

On remand, the trial court entered its order effecting the directions of the appellate court. The plaintiffs were given additional time to file an amended petition. Subsequently, both plaintiffs and defendants filed applications for attorneys fees and costs in relation to the *Harris I* litigation. After a three-day evidentiary hearing, the trial court overruled Union Electric's application for fees. On November 1, 1982, the trial court entered its order granting plaintiffs' attorneys' fees of $696,000 and expenses of $23,937.39.

The trial court based the fee award on a provision in the bond indenture permitting the court to exercise its discretion in awarding fees in any suit for the enforcement of rights under the indenture. As additional grounds, the trial court relied on "general equitable principles", to support the fee award, finding that plaintiffs' attorneys conferred a substantial benefit on the class by forestalling the redemption of the bonds.

Union Electric challenged the fee award on appeal. The Court of Appeals, Eastern District, found the fee award faulty on two grounds: first, plaintiffs received no tangible recovery, and second, Union Electric was granted summary judgment in *Harris I*. Furthermore, the court noted that the issues presented in plaintiffs' second amended petition had not been addressed. Although the trial court designated its order final and appealable, the court of appeals considered the fee award a "partial judgment" without any resolution of the substantive legal issues contained in the underlying claim. The court stayed the attorneys' fees judgment pending final disposition of all issues and dismissed the appeal as premature.

### Harris III

While the *Harris I* appeal was pending, the same three named plaintiffs in the

state court proceedings filed a class action in the federal court alleging that Union Electric violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. § 240.10b–5 (1985). Plaintiffs also realleged all of their state court claims. Specifically, plaintiffs claimed that the bond prospectus both misrepresented and omitted material facts regarding the call-protection provisions of the bond contract, and that the attempted plan to call the bonds constituted a scheme by Union Electric to defraud its bondholders. At the request of the parties, the federal court action was stayed pending the decision of the Missouri court of appeals on plaintiffs' state court claims for declaratory and injunctive relief (*Harris I*).

Following the decision in *Harris I*, on January 16, 1982, the federal district court certified the federal class as a Fed.R.Civ.P. 23(b)(3) class, defined as "all ... present holders and transferees of the bonds". In May, 1983, the court redefined the federal class as all persons who held the bonds "as of the public redemption announcement by Union Electric Company on April 11, 1978." The district court further instructed that notice be given to all class members advising them of the nature of the action and their right to request exclusion from the class.

The notice described the federal class claims and expressly advised that a similar suit was pending in state court. The notice also stated that those requesting exclusion from the class "will not share in the benefits, if any, of any favorable judgment or settlement of [the 10b–5 claims] and will not be bound by any adverse judgment that may be rendered."

Of the more than 1,500 bondholders meeting the class definition, 194 bondholders holding 2094 bonds returned the forms and were granted exclusion from the federal class. Holders of ninety-seven percent of the bonds participated in the federal litigation.

6. Pertinent portions of the indenture are set forth in *Harris I*, 622 S.W.2d at 242–44.

Eventually, the district court lifted the stay on plaintiffs' 10b–5 claims. The stay was continued as to the pendent state claims awaiting adjudication in the state court. The federal suit proceeded to a bifurcated jury trial on the issues of liability and damages in the 10b–5 allegations.[7]

The plaintiffs' complaint at trial consisted primarily of allegations that the prospectus failed to disclose adequately Union Electric's right to redeem the bonds. The plaintiffs argued that the prospectus led them to believe that any general redemption of the bonds prior to maturity could only be made at premium prices (called "Regular Redemption Prices"). Union Electric's planned redemption was to be for par value (called "Special Redemption Prices"). Plaintiffs also contended that prior to March 1, 1985, no bonds could be redeemed where the money for the redemption was obtained at an interest cost of 10.6 percent or less per annum. Although *Harris I* established Union Electric's contractual right to redeem under these conditions, plaintiffs argued at the federal trial that the prospectus misrepresented this material fact.

The court instructed the jury that it could impose liability based upon a finding that Union Electric either: (a) employed a device, scheme or artifice to defraud; (b) made an untrue statement of material fact or omitted a material fact; or (c) engaged in an act, practice or course of business that operated as a fraud.[8] The jury returned a verdict in favor of the federal bondholder class, fixing damages at $2,716,140. The plaintiffs immediately dismissed all non–10b–5 claims without prejudice.

Relying on the judgment for damages, plaintiffs sought summary judgment on their claims for injunctive relief pursuant to Rule 10b–5 and their claims for attorneys' fees under the bond contract. On January 28, 1985, the federal district court found no evidence that Union Electric would attempt to redeem the bonds in the 31 days remaining in the disputed "no-call" period and refused to provide injunctive relief. In addition, the district court refused to award attorneys' fees against Union Electric as plaintiffs requested, but held that all fees would be awarded from the judgment fund.[9]

Union Electric appealed. The United States Court of Appeals for the Eighth Circuit affirmed the judgment finding the evidence sufficient to sustain the jury verdict in favor of the class of bondholders. Specifically, the court ruled that the evidence indicated that the parties mutually intended that the bonds possess solid protection against call for ten years; that this protection was material, affected the price of the bonds, and was relied upon by plaintiffs; that the prospectus was ambiguous and misleading by omitting material facts that would have revealed Union Electric's right to call the bonds; and that Union Electric intended to defraud the plaintiffs when it announced its plan to call the bonds in 1978.

The federal appeals court also affirmed the measure of damages awarded to the class. The damages were calculated as the difference between the purchase price and the actual value of the bonds on the date they were issued. This formula represented the reduced value of the bonds caused by the lack of call protection.

On October 8, 1986, Union Electric paid into the registry of the district court the judgment of $2,716,240, with interest plus costs.

---

**7.** The 10b–5 claim is the only issue ever to be determined by an actual trial. All other issues have progressed in a piecemeal fashion generated by a string of summary judgments granted to the plaintiffs by the state trial court and resulting in predictable appeals by the defendant.

**8.** These are the essential elements of unlawful conduct outlined in Rule 10b–5. 17 C.F.R. § 240.10b–5 (1985).

**9.** Plaintiffs based their request for fees on Article IX, Section 12 of the bond contract, the same provision relied upon in the *Harris II* controversy and the present appeal. Plaintiffs' counsel received more than one million dollars in fees and costs from the federal judgment fund.

## The Present Appeal

Following the disposition of the federal litigation, the plaintiffs returned to state court and requested the stay of proceedings be lifted. Union Electric filed a separate motion to lift the stay and alternative motions for summary judgment and to set aside the award of attorneys' fees.

Subsequently, on the basis of the federal judgment, plaintiffs filed their third amended petition. Count I sought injunctive relief on behalf of the November 21, 1978, bondholder class and their transferees. Counts II and III sought an award of actual damages, based on attorneys' fees and expenses incurred in the "collateral" federal litigation and punitive damages against Union Electric based upon alleged violations of the federal securities laws other than Rule 10b–5 (Count II) and common law fraud (Count III). The last two counts are stated in behalf of a different class, defined as those bondholders who held the bonds on April 11, 1978, and who did not opt out of the federal suit. Plaintiffs moved for summary judgment on Count I. Union Electric and Centerre filed motions to dismiss.

On November 6, 1986, plaintiffs filed a proposed order for summary judgment on Count I. On January 6, 1987, the trial court entered the order without modification. Implicitly, the defendants' motions were overruled.

The order concluded that the facts necessary for summary judgment were fully established under principles of collateral estoppel in *Harris III*. The trial court found that the prospectus was misleading, that the provision in the bond contract permitting redemption was "specifically contrary to the intended belief that Union Electric attempted to engender in the purchasers of the Series 2005 Bonds at the time of their original issue and sale," and that the use of cash in the Maintenance Fund for redemption constituted "a course of business or a device, scheme or artifice that operates as a fraud upon the [bondholders]." The court found that the redemption plan constituted "fraud and deceit, and constituted a violation of § 17a of the 1933 Act and of § 323(a) of the 1939 Act."

The trial court's order permanently enjoined Union Electric and Centerre from redeeming or attempting to redeem the bonds at a redemption price other than at the premium price listed on the bonds. The order precludes redemption at par and from using any money from the Maintenance Fund for the purpose of redeeming the bonds prior to maturity at other than the premium price. Consistent with its injunction order, the court entered summary judgment in favor of Centerre on Centerre's cross-claims against Union Electric. Centerre had sought directions on whether cash deposited in the Improvement Fund could be used to redeem bonds at par value. The order also reaffirmed the November 1, 1982, award of attorneys' fees and granted interest on the fee award retroactive to November 21, 1982. The trial court also granted a request for added supplemental fees. Finally, the trial court's order entered summary judgment in favor of the plaintiffs on Count I of the third amended petition and against Union Electric and Centerre on their counterclaims.

The Court of Appeals, Eastern District, affirmed the judgment of the trial court. That court rejected Union Electric's defense of *res judicata* and found the elements of common law fraud were established in *Harris III* and could be used offensively under the doctrine of collateral estoppel. The court of appeals found the injunctive relief granted to the class appropriate. Implicitly, the court lifted its prior stay on attorneys' fees litigated in *Harris II* and affirmed the additional attorneys' fees plus interest awarded by the trial court.

On transfer to this Court, Union Electric argues that the plaintiffs' class was improperly certified and their claims barred by *res judicata*. Furthermore, Union Electric contends that the findings established in the prior Rule 10b–5 suit are not conclusive in establishing the elements of common law fraud. Additionally, Union Electric argues that injunctive relief constitutes a double recovery for the plaintiff class and

is violative of the "benefit of the bargain" rule followed in Missouri courts. Finally, Union Electric alleges error in the judgment based on violations of federal securities laws and in the award of attorneys' fees.

## II.

■ We turn initially to the question whether injunctive relief is an appropriate remedy for this class of plaintiffs. An injunction is an extraordinary and harsh remedy and should not be employed where there is an adequate remedy at law. *State ex rel. Phillips v. Yeaman*, 451 S.W.2d 115 (Mo. banc 1970).

Plaintiffs-respondents dispute that the damages recovered by members of their class constitute an adequate remedy at law. Although they concede that the federal class was awarded the difference between the purchase price and the actual value of the bonds without call protection, respondents maintain that they will suffer additional damages in the event Union Electric ever redeems the bonds before maturity. It is this alleged prospective damage that forms the foundation of respondents' claim for injunctive relief.

In order to address these issues fully, we find it necessary to examine portions of the class separately.[10] We choose to segregate the claims into two categories; those who recovered damages in the federal action and those who opted out of the federal suit.

---

10. Union Electric suggests that the class be decertified. To bring a class action the prerequisites found in Rule 52.08 must be met. One of those requirements is that the claims and defenses of the representative party be typical of the class he represents. In conjunction with the typicality requirement, the named plaintiff must have legal standing to litigate the claims on behalf of the class. Because the named plaintiffs as well as the majority of the class were awarded damages in the federal action, they are not proper representatives to obtain additional relief on their own behalf or on behalf of others. They must succumb to the fundamental legal tenant that their recovered damages have "made them whole". In contrast, a class representative "must be a part of the class and possess the same interest and suffer the same injury as the class members." *East Texas Motor*

## A.

## The Federal Class Participants

### 1.

Undisputably, members of the federal class action who recovered money damages represent the largest sector of the present class. As certified by the federal court, holders of 97 percent of the bonds met the class definition and participated in the litigation. In total more than 1300 bondholders received a judgment amounting to $40.00 per $1,000 bond awarded by the federal court. This same group, with the addition of those who opted out of the federal litigation, now seeks injunctive relief from this Court.

In Missouri, a victim of fraud has two options—he can return what he purchased and get his money back (recission), or keep what he purchased and sue for damages measured as the difference between its value as represented and its true value as of the date of purchase (benefit of the bargain). *Heberer v. Shell Oil Co.*, 744 S.W. 2d 441, 443 (Mo. banc 1988); *Rosenblum v. Jacks or Better of America West*, 745 S.W. 2d 754, 764 (Mo.App.1988).

■ A plaintiff cannot obtain both damages on the contract and a remedy such as reformation or recission, which depends on rejection of the contract as written. *Timmons v. Bender*, 601 S.W.2d 688, 690 (Mo. App.1980). Where a party having the right to pursue one of two inconsistent remedies makes an election, institutes suit and prose-

---

*Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977); *Shapiro v. Midwest Rubber Reclaiming Co.*, 626 F.2d 63, 71 (8th Cir.), *cert. denied*, 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981). Plaintiffs who cannot assert a claim individually cannot assert it on behalf of a class. *Foster v. Center Township of La Porte County*, 798 F.2d 237, 244–45 (7th Cir.1986); *Kansas City, Mo. v. Williams*, 205 F.2d 47, 51 (8th Cir.); *cert. denied*, 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed. 351 (1953).

While Union Electric may present a legitimate argument for decertification, we find that the same result can be reached on the plaintiffs' claims without the necessity of decertifying the class. Therefore, we continue our discussion by addressing the issues presented in the claim for injunctive relief.

cutes it to final judgment, he cannot thereafter pursue an inconsistent remedy, regardless of whether the judgment was in his favor or against him. *King v. Guy*, 297 S.W.2d 617, 622 (Mo.App.1956).

■ The plaintiffs-respondents elected to pursue in federal court their claim that they were induced to purchase the bonds in reliance upon fraudulent misrepresentations and omissions in violation of federal securities laws. The jury in the federal suit awarded the bondholders $2,716,240 in damages. The damages represented the difference between the market value of the bonds with the call protection declared in the prospectus and the market value of the bonds with the redemption features found in the indenture and held valid in *Harris I.* Such calculation of damages is consistent with the "benefit of the bargain" theory.

Nevertheless, plaintiffs-respondents contend that the federal judgment was retrospective and only compensated for the fraud on the market prior to the attempted call on April 11, 1978. Thus, although as a federal class they obtained the difference between what they paid for the bonds and their true value on the date of purchase, respondents maintain they would suffer additional damage in the form of lost premium and interest payments in the event Union Electric ever redeems the bonds. It is for this additional "prospective" damage the plaintiff class seeks injunctive relief occasioned by an uncertain future redemption of the bonds.

By awarding the plaintiffs-respondents the difference between what they paid and what they should have paid if the right to redeem the bonds had been fully disclosed, the damages awarded in the federal suit put these plaintiffs in the same position as if they had known from the beginning that the bonds could be recalled. Thus, if Union Electric were to redeem the bonds presently, there can be no additional injury for which the federal plaintiffs have not already been compensated. In contrast, enjoining redemption gives these bondholders a bond of grossly inflated value. They have received an adjusted purchase price for a bond that can be redeemed at par, but now seek a bond that cannot be redeemed at par under any circumstances.

It is fundamental in our law that a plaintiff is entitled to one recovery for any wrong done to him. In Missouri, we adhere to a principle called the doctrine of election of remedies. This doctrine maintains that one may not both affirm and disaffirm a contract and may not obtain both damages for fraudulent inducement to enter into a contract and a remedy prohibiting the enforcement of the contract as written. *See Berger v. Mercantile Trust Co.,* 352 S.W.2d 644 (Mo.1961).

In the case at bar, we find inherent conflict in the plaintiffs-respondent's position. These plaintiffs elected to prosecute to final judgment their claim for damages in the federal court. The federal jury was instructed that Union Electric could redeem the bonds. The plaintiffs were awarded damages consistent with a finding that the bonds could be redeemed, but that the plaintiffs paid an inflated price for bonds without call protection.

In choosing to pursue this remedy, plaintiffs-respondents chose to affirm the contract and to sue for damages. Having made that election, and having been successful, plaintiffs cannot now disaffirm the contract as written and seek an injunction to conform the contract provisions to what plaintiffs originally believed them to be. It is a result such as this that the doctrine of election of remedies is meant to prevent. *See Empire Gas Corp. v. Small's LP Gas Co.,* 637 S.W.2d 239, 246 (Mo.App.1982) (parties who unsuccessfully prosecuted a claim for damages for fraud were barred from claiming that enforcement of the contract as written was prohibited because of mutual mistake.)

## 2.

Next, plaintiffs-respondents contend that Union Electric's redemption rights must be enjoined because redemption of the bond on the terms approved in *Harris I* would be wrongful. They maintain on the basis of *Harris III* that Union Electric obtained its redemption right through fraud. These contentions are without merit. Union Elec-

tric failed to disclose its redemption rights adequately, causing the bondholders to pay too much. The inadequate disclosure violated Rule 10b–5. The federal class received the difference between what they paid and what they should have paid. By electing to retain their bonds and sue for the difference in value, plaintiffs-respondents are prohibited from suggesting that Union Electric would be acting wrongfully if it now exercised the redemption rights confirmed in *Harris I.*

Finally, as an alternative justification for the injunction, plaintiffs-respondents urge that injunctive relief can be justified as a punitive measure on the grounds of "public policy", even if they have otherwise been made whole. Plaintiffs-respondents do not provide any support for this assertion nor has this Court encountered any such authority. We find that the remedy of an injunction is inherently compensatory, not punitive. *Hurtgen v. Gasche,* 227 S.W.2d 494, 498 (Mo.App.1950). *See also Eichelsbach v. Harding,* 309 S.W.2d 681, 684 (Mo. App.1958). It is for this reason that an injunction will not lie where the plaintiff has an adequate remedy at law. *Walker v. Norris,* 145 S.W.2d 972, 973 (Mo.App.1940). The plaintiffs have already demonstrated there is an adequate remedy at law by obtaining damages in the federal court suit.

We hold that the group of plaintiffs who participated in the federal suit have received adequate relief and are not entitled to an injunction that permanently protects their bonds from early redemption.

### B.

#### Federal Opt Outs

The second category of plaintiffs in this class action are those who did not participate in the federal suit. These "opt outs" are presumably a small fraction of the current class represented in this appeal. It is difficult to determine exactly how many federal class opt outs and their transferees are represented. No attempt has been made in the record before this Court to establish the identities of those who opted out of the federal action. We do

know that the federal class was composed of those persons who held the Series 2005 bonds on April 11, 1978. After notice was given to those meeting the federal class definition, 194 bondholders requested exclusion from the litigation. However, those holding 97 percent of the total bonds issued did participate in the federal class. From this factor, we can deduce that no more than 3 percent of the total bonds issued were held by the federal opt outs or their transferees. It is the claim of this small group who did not benefit from the damage judgment which we now address.

Plaintiffs' representatives argue that because this portion of their class has received no recovery to date, this Court cannot "summarily disenfranchise" their claims for relief by rejecting their request for injunction. However, we hold the opt outs are not entitled to injunctive relief.

Plaintiffs-respondents maintain that this small group of bondholders has always been a part of the state class. The state class was defined and certified on November 21, 1978, seven months after the call date. The federal class, of which these bondholders opted out, was not certified until May, 1983. At the time these bondholders chose not to participate in the federal litigation, they had notice that their interests were being represented in the state court.

Also pertinent was the fact that the state class had already suffered a reversal of their award of injunctive relief in *Harris I.* Arguably, these federal opt out bondholders were put on notice that Union Electric possessed the contractual right to redeem the bonds at par. This becomes relevant in light of the fact that the *Harris I* decision was handed down nearly two years prior to the bondholders' choice not to participate in the federal litigation.

This Court is not privy to the reasons these bondholders opted out of the federal class. However, relevant to this period is the fact that the state court class appeared to be most interested in pursuing injunctive relief to forestall a bond redemption prior

to March 1, 1985, the end of the "no-call" period.

The bondholders maintain they purchased the bonds believing that the bonds could not be called prior to March 1, 1985. No reasonable reading of the prospectus permits the conclusion that call protection extended beyond March 1, 1985. That date has come and gone. Therefore, we find, as did the federal district court, that the issue of enjoining the redemption of the bonds became moot on March 1, 1985. To enjoin Union Electric from ever redeeming the bonds before maturity is punitive. This Court will not employ the strong arm of equity to enforce rights already lost. *Hurtgen v. Gasche*, 227 S.W.2d 494 (Mo. App.1950).

Neither court orders, nor injunctions nor any human agency can prevent the happening of things that have already occurred. Time does not stand still. In the language of a famous radio program: "Time Marches On." The utter futility of attempting to restrain acts that have already occurred, or that are impossible of future occurrence because of the passage of time, has been clearly recognized and declared by our Supreme Court ... *Id.* at 497–98.

We hold that the group of plaintiffs who did not participate in the federal suit are not now entitled to injunctive relief.[11]

### C.

### Attorneys' Fees

Finally, we address the issue of attorneys' fees as awarded by the trial court's order. The first portion of the trial court's order reinstates $717,937.36 in fees awarded to plaintiffs-respondents' counsel in 1982 for services performed in obtaining the judgment reversed in *Harris I.* Union Electric's prior appeal of this award was

rejected as premature in *Harris II.* In its January 6, 1987, order, the trial court reaffirmed this fee award with interest thereon from November 21, 1982. A separate fee award of $63,225 was granted to plaintiffs-respondents' counsel for additional costs and fees encountered in the present suit for injunction.

■ The general rule in Missouri is that attorneys' fees are not awarded as a matter of right even to the successful litigant. *Arnold v. Edelman*, 392 S.W.2d 231, 239 (Mo.1965). Rather, our law provides the recovery of fees only when they are provided for by contract, statute or where equity may require. *Osterberger v. Hites Construction Company*, 599 S.W.2d 221, 230 (Mo.App.1980). Where the claim to attorneys' fees is based upon a contract, the court must adhere to the terms of the contract and may not go beyond it. *O.H. Breckner Associates, Inc. v. V.S. DiCarlo General Contractors, Inc.*, 589 S.W.2d 96, 97 (Mo.App.1979).

■ The November 1, 1982 fee award in favor of petitioners David L. Campbell and Edward Fredrickson was based on the court's findings that they were entitled to such fees because (1) the indenture authorized legal fees under Article IX, Section 12, and (2) they preserved a benefit for the bondholders since the practical effect of their lawsuit prevented Union Electric from redeeming the bonds, despite the fact they did not recover any tangible funds for the plaintiffs or succeed on the merits in *Harris I.* This latter reason is founded on "general equitable principles." We first examine the bond indenture.

Article IX, Section 12 of the Composite Indenture of the bond contract provides in pertinent part:

---

11. Both parties go to great lengths arguing the merits of the use of collateral estoppel in this appeal. Plaintiffs-respondents contend that collateral estoppel applies to the issues of common law fraud and securities law violations. Union Electric argues that the finding of a 10b–5 violation in *Harris III* is not identical or conclusive of the issues of fraud or other securities law violations. Because we find that injunctive relief is

not appropriate in this case, we do not reach the merits of the underlying claims that were to support the relief. An appellate court opinion should be limited to those questions essential to a proper disposition of the appeal. *State ex rel. Ellsworth Freight Lines, Inc. v. State Tax Com'n of Missouri*, 651 S.W.2d 130, 133 (Mo. banc 1983).

[T]he parties to this Indenture and the Bondholders agree that the court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, ... that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; *provided, however that the provision of this paragraph shall not apply ... to any suit instituted by any Bondholder, or group of Bondholders, holding in the aggregate more than ten per cent (10%) in principal amount of the Bonds outstanding....* (emphasis added)

The indenture is unambiguous; it precludes any award of attorneys' fees to plaintiffs on two separate grounds. First, to support an award, a party must first establish that it has a "right or remedy under the Indenture." Plaintiffs failed to establish any such right in *Harris I.* Instead, the court of appeals' opinion in *Harris I* conclusively establishes that respondents' claims under the indenture were without merit and that the indenture did not give them the "right or remedy under this indenture" they sought to enforce. The November 1, 1982, order awarding attorneys' fees for work performed in *Harris I* is contrary to the terms of the indenture.

Similarly, the January 6, 1987, award of additional fees for work performed in obtaining the injunctive relief was grounded on common law fraud and/or provisions of the securities law. The present claim is not premised on rights or remedies provided by the indenture and therefore the subsequent award of attorneys' fees cannot be sustained.

Second, like the present action, the litigation in *Harris I* was brought as a class action on behalf of all bondholders. Our attention here focuses on the portion of the indenture that expressly excluded authorization of attorneys' fees in a suit representing more than ten percent of the principal amount of bonds outstanding. We do not go beyond the contract to award attorneys' fees for work prepared in these class action suits representing more than 90 percent of the bonds outstanding.

Moreover, this Court finds no support for these awards on the basis of "general equitable principles." An award of attorneys' fees to be paid by a successful defendant to attorneys for unsuccessful plaintiffs on the grounds of delay caused by the unsuccessful prosecution of a lawsuit is unprecedented. To sanction such an award on this basis would encourage frivolous actions whenever delay would prove beneficial. This unsound policy cannot be justified on equitable principles or public policy.

Inasmuch as the 1982 fee award must be reversed, the award of prejudgment interest must also be stricken. Prejudgment interest cannot be awarded on an interlocutory judgment. *Crawford v. Smith,* 470 S.W.2d 529, 533 (Mo. banc 1971). The 1982 fee award was previously held to be an interlocutory order in *Harris II.*

We conclude that plaintiffs-respondents have no right under the indenture to obtain attorneys' fees. In the absence of any success on the merits, these petitioners have advanced no basis for ignoring the general rule that even a successful litigant is not entitled to an award of attorneys' fees as a matter of right. *Arnold v. Edelman,* 392 S.W.2d 231, 239 (Mo.1965).

### III.

The judgment of the trial court is reversed. The cause is remanded with directions to enter summary judgment in favor of Union Electric, and for such other proceedings as may be consistent with this opinion.

BLACKMAR, WELLIVER, RENDLEN and HIGGINS, JJ., and GAITAN, Special Judge, concur.

BILLINGS, C.J., not participating.

COVINGTON, J., not participating because not a member of the Court when cause was submitted.