Collette F. HOLLIPETER and Ronald D. Hollipeter, Plaintiffs-Respondents,

v.

STUYVESANT INSURANCE COMPANY, a corporation, Defendant-Appellant.

No. KCD 26874.

Missouri Court of Appeals, Kansas City District.

May 5, 1975.

John R. Caslavka, Kansas City, for defendant-appellant; Shughart, Thomson & Kilroy, Kansas City, of counsel.

Walter A. Raymond, Kansas City, for plaintiffs-respondents.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

SOMERVILLE, Presiding Judge.

The Stuyvesant Insurance Company, defendant below (hereinafter referred to as "Stuyvesant"), has appealed from a summary judgment rendered in favor of Collette F. Hollipeter and Ronald D. Hollipeter, husband and wife, plaintiffs below (hereinafter referred to as "Hollipeters"), in an action for damages for breach of contract.

Stuyvesant banks on one point for appellate relief—the doctrine of election of reme-

dies "barred" the Hollipeters from prosecuting the action for damages for breach of contract.

A rather prolix statement of pertinent facts antedating and postdating the filing of the breach of contract action by the Hollipeters is unavoidably necessary in order to comprehend and place Stuyvesant's singular point on appeal in proper dispositional context.

On or about August 4, 1963, the Hollipeters sustained personal injuries in a two car collision. Following the collision they initiated separate actions for damages in the Circuit Court of Cass County, Missouri, against Joseph Dewey McCommon, Jr., hereinafter referred to as "McCommon", owner and operator of one of the two cars involved in the collision. Both actions proceeded to final judgments in favor of the Hollipeters. Collette F. Hollipeter obtained a judgment for $7,500.00 against McCommon, and Ronald D. Hollipeter obtained a judgment for $5,057.50 against McCommon.

McCommon's liability carrier, Crown Insurance Company, had a treaty of reinsurance with Stuyvesant. Crown Insurance Company went into receivership in West Virginia and the judgments obtained by the Hollipeters against McCommon were never satisfied. In view of this turn of events general executions were issued to enforce payment of the judgments and, ancillary thereto, Stuyvesant was summoned as garnishee.

Article VII of the treaty of reinsurance between Crown Insurance Company and Stuyvesant provided as follows: "The actual payment in cash by the Company of any loss shall be a condition precedent to any recovery under this Agreement, and subject to such condition, the liability of the Reinsurer shall follow that of the Company and shall be subject within the applicable policy limits in all respects to all the general and special stipulations, clauses, waivers and modifications of the Company's policy, binder or other undertaking, and any endorse-ments thereon." A common principal issue was joined in both garnishment proceedings, namely, whether Article VII of the treaty of reinsurance provided for indemnity against "loss" or "liability".

Prior to trial of the issues joined in the garnishment proceedings, the Hollipeters and Stuyvesant, by contract, compromised and settled both garnishment proceedings for "$5,500.00 and costs." Subsequent thereto and prior to dismissal of the garnishment proceedings, Stuyvesant repudiated and refused to honor the settlement contract. Buffeted by this new turn of events, the Hollipeters proceeded to trial in the garnishment proceeding. The separate garnishment proceedings were consolidated for trial and resulted in a judgment in favor of Stuyvesant and against the Hollipeters. Stripped of all unnecessary legal verbage, the adverse judgment rendered against the Hollipeters was predicated upon a finding by the Circuit Court of Cass County that the treaty of reinsurance entered into between Crown Insurance Company and Stuyvesant "provided for indemnity" by Stuyvesant "against loss rather than indemnity against liability", and since Crown Insurance Company "made no actual payment in cash of any loss to the Hollipeters" there was "no liability" on the part of Stuyvesant to the Hollipeters under the terms of the reinsurance treaty. The Hollipeters filed a notice of appeal from the adverse judgment. However, they failed to perfect their appeal and upon motion of Stuyvesant the appeal was dismissed on June 29, 1971, by the Kansas City Court of Appeals.

On March 16, 1971, the Hollipeters filed suit in the Circuit Court of Jackson County, Missouri, against Stuyvesant seeking damages for breach of the contract compromising and settling the garnishment proceedings. Subsequent to dismissal of the Hollipeters' appeal from the adverse judgment against them in the consolidated garnishment proceedings, Stuyvesant filed a motion for summary judgment in the breach of contract action. Stuyvesant's motion for

summary judgment was bottomed on certain undisputed facts heretofore delineated: (1) During the pendency of the consolidated garnishment proceedings, and prior to any judgment therein a contract was entered into between Stuyvesant and the Hollipeters compromising and settling the garnishment proceedings for $5,500.00 and costs; (2) Stuyvesant repudiated and refused to honor the settlement contract; and (3) thereafter the Hollipeters pursued the consolidated garnishment proceedings to a final judgment adverse to them.

The sole legal theory espoused by Stuyvesant in support of its motion for summary judgment may be stated as follows: When Stuyvesant repudiated and refused to honor the contract compromising and settling the consolidated garnishment proceedings, the Hollipeters at that time had two inconsistent remedies which they could pursue, an action for damages for breach of contract or pursual of the consolidated garnishment proceedings to final judgment, and, having elected to follow the latter course, the Hollipeters were now precluded, as a matter of law, from bringing the action for damages for breach of contract under the doctrine of election of remedies.

The Hollipeters countered Stuyvesant's motion for summary judgment with one of their own. Their legal theory being, in essence, that the doctrine of election of remedies was inapplicable because they did not have two inconsistent remedies available to them; instead, in fact, they had but one available remedy, an action for damages for breach of contract, and their pursual of the consolidated garnishment proceedings to a final judgment adverse to them was pursual of an imaginary or mistaken remedy.

This court notes, parenthetically, that Stuyvesant at no time affirmatively pleaded that its repudiation of the contract and the Hollipeters' subsequent pursual of the consolidated garnishment proceedings effected a mutual rescission of the contract of settlement and, therefore, no contract of settlement existed upon which to bring suit. The pleadings and proceedings at the trial level in toto, viewed objectively, reveal that the only issue presented below, as here, was whether the Hollipeters were barred under the doctrine of election of remedies from bringing the breach of contract action. A different analysis would flout reality.

The trial court overruled Stuyvesant's motion for summary judgment, but sustained the Hollipeters' motion and entered judgment in their favor, to-wit, that they "have and recover from the defendant, Stuyvesant Insurance Company, the sum of $5,500.00 plus interest at the rate of six per cent (6%) per annum together with costs."

As previously noted, Stuyvesant appealed from the adverse judgment rendered against it on the sole ground that the doctrine of election of remedies "barred" the Hollipeters from bringing the action for damages for breach of contract.

■ A tacit unanimity of opinion exists between Stuyvesant and the Hollipeters regarding certain fundamental principles inherent in the doctrine of election of remedies. The doctrine is sententiously expressed in De Mott v. Great American Ins. Co. of New York, 234 Mo.App. 31, 131 S.W.2d 64, 67 (1939) [cited with approval and adopted in Pemberton v. Ladue Realty & Construction Co., 359 Mo. 907, 224 S.W.2d 383 (1949)]: "The law is well settled that where a party has a right to pursue one of two inconsistent remedies, makes his election, institutes suit and prosecutes it to final judgment, or receives something of value on the claim, he cannot thereafter pursue another and inconsistent remedy." The tacit unanimity of opinion existing between the parties extends to a well recognized collateral limitation inherent in the doctrine, namely, a distinction must be recognized between pursuit of one of two or more inconsistent remedies and pursuit of an imaginary or mistaken remedy, and pursuit of an imaginary or mistaken remedy

does not bar the subsequent pursuit of a viable remedy. De Mott v. Great American Ins. Co. of New York, supra, 131 S.W.2d l.c. 67 and Pemberton v. Ladue Realty & Construction Co., supra, 224 S.W.2d l.c. 385. From this point on the heretofore tacit unanimity of opinion between Stuyvesant and the Hollipeters ceases.

Stuyvesant vigorously contends that the Hollipeters' pursual of the consolidated garnishment proceedings to a final judgment, although adverse to them, was the pursuit of a viable remedy, thereby barring them from bringing the breach of contract action. With equal vigor the Hollipeters contend that pursuit of the consolidated garnishment proceedings to a final judgment adverse to them was the pursuit of an imaginary or mistaken remedy and, therefore, they are not barred from bringing the suit for damages for breach of contract. Thus, the apical question, the answer to which is dispositive of this appeal, is whether the Hollipeters in the consolidated garnishment proceedings pursued a viable remedy or a mistaken and imaginary remedy? The answer to this vexing question lies in the consolidated garnishment proceedings and the basis for the adverse judgment rendered therein against the Hollipeters.

▬ Treaties of reinsurance have long been a prolific source of litigation in this and other states. Much of the litigation in this state has concerned itself with whether a particular treaty of reinsurance constituted a contract for indemnity against loss or indemnity against liability. Reference hereafter to particular principles is narrowed to those relevant to the single issue raised by Stuyvesant on appeal. The "general rule" in this and other states is that the "ordinary" treaty of reinsurance indemnifies the primary insurer against loss rather than against liability. The distinction between "ordinary" treaties of reinsurance providing for indemnity against loss and those providing for indemnity against liability assumes critical importance in determin-ing or fixing the rights of a judgment creditor (occupying a status similar to that of the Hollipeters) to proceed by way of garnishment against a reinsurer when the primary liability carrier has become insolvent. If the treaty of reinsurance is construed as an "ordinary" treaty providing for indemnity against loss, garnishment will not lie in favor of a judgment creditor as garnishor against the reinsurer as garnishee. If the treaty of reinsurance is construed as providing for indemnity against liability, garnishment may lie in favor of a judgment creditor as garnishor against the reinsurer as garnishee. The leading case in this state proclaiming the principles heretofore enunciated is Homan v. Employers Reinsurance Corporation, 345 Mo. 650, 136 S.W.2d 289 (1939). See also First National Bank of Kansas City v. Higgins, 357 S.W.2d 139 (Mo. banc 1962). In both *Homan* and *First National Bank of Kansas City*, the treaties of reinsurance involved were construed as contracts of indemnity against liability and that the respective judgment creditors were third party beneficiaries thereof, and, therefore, equitable garnishment would lie in favor of the respective judgment creditors as garnishors against the respective reinsurers as garnishees.

Construction of the treaty of reinsurance entered into between Crown Insurance Company and Stuyvesant, however, is not before this court. That crucial task was performed by the Circuit Court of Cass County in the consolidated garnishment proceedings. The judgment rendered therein, which became final for all purposes when the Hollipeters' notice of appeal was dismissed by the Kansas City Court of Appeals because of their failure to perfect the appeal, was obviously predicated upon a finding that the treaty of reinsurance in question, as a matter of law, was a contract for indemnity "against loss rather than indemnity against liability". Having so construed the treaty of reinsurance, the Circuit Court of Cass County further found that since Crown Insurance Company "made no

actual payment in cash of any loss" to the Hollipeters "there [was] no liability on the part" of Stuyvesant, as garnishee, to the Hollipeters. On the combined basis of these findings, the Circuit Court of Cass County entered judgment in the consolidated garnishment proceedings exonerating Stuyvesant as garnishee.

■ The judgment in the consolidated garnishment proceedings can only be construed as an adjudication that the Hollipeters had no remedy by way of garnishment against Stuyvesant. By virtue of the doctrine of res judicata that final judgment, whether legally correct or incorrect, rings with inexorable finality regarding any present contention by Stuyvesant that the Hollipeters had a viable remedy by way of garnishment. Payne v. St. Louis Union Trust Company, 389 S.W.2d 832, 836–838 (Mo.1965), and Butler v. Manley, 416 S.W.2d 680, 682 (Mo.App.1967).

■ Stuyvesant presently argues, in obvious contradiction to the position taken by it in the consolidated garnishment proceedings, that Sections 379.195 and 379.200, RSMo 1969, V.A.M.S., regardless of the terms of and the construction given the reinsurance treaty, gave the Hollipeters a statutory remedy by way of garnishment. This argument completely overlooks and ignores the fact that the language, "if liability there be", contained in line ten of Section 379.195, supra, rendered said statutory sections inapplicable since the Circuit Court of Cass County in the consolidated garnishment proceedings found and held that there

was no liability on the part of Stuyvesant, due to the fact that the treaty of reinsurance indemnified Crown against loss rather than liability and Crown had suffered no loss.[1]

■ The Hollipeters, in point of fact, did not have two inconsistent remedies. They had no remedy by way of garnishment. This court cannot ignore the Circuit Court of Cass County's construction of the treaty of reinsurance inasmuch as the doctrine of res judicata relegated the final judgment in the consolidated garnishment proceedings to the realm of finality for all time and all purposes as between Stuyvesant and the Hollipeters. Payne v. St. Louis Union Trust Co., supra, and Butler v. Manley, supra.

The Hollipeters' pursuit of the consolidated garnishment proceedings to final judgment adverse to them was nothing more than pursuit of an imaginary or mistaken remedy. Hence, they were not "barred" by the doctrine of election of remedies from bringing the action for damages for breach of contract against Stuyvesant. De Mott v. Great American Insurance Co. of New York, supra, and Pemberton v. Ladue Realty & Construction Co., supra.

The joint motions for summary judgment and admission in support thereof, particularly in conjunction with the issue joined by the Hollipeters' petition and Stuyvesant's answer, patently disclose that no genuine issue of fact existed for trial and that the breach of contract action was ripe for disposal by way of summary judgment. Tan-

---

1. Stuyvesant has failed to cite, and this court's own independent research has failed to disclose, any case construing Sections 379.195 and 379.200, RSMo 1969, V.A.M.S., to be applicable to reinsurers under "ordinary" treaties or contracts of reinsurance, i. e. those providing for indemnity against loss rather than liability. In Melco System v. Receivers of Trans-America Ins. Co., 268 Ala. 152, 105 So.2d 43 (1958), the Alabama Supreme Court in construing statutes virtually identical to Sections 379.195 and 379.-200, supra, held as follows: "But, it has never been held in Alabama that these sections apply to a reinsurer. Reinsurance is not a new development in the insurance field. The Legislature might very well include the reinsurer in the statute, but that is a legislative matter, and until that is done, we are constrained to hold that the sections do not warrant a construction or interpretation that the Legislature intended to go beyond an insurer to include a reinsurer under an 'ordinary' reinsurance agreement, which we have found the one in controversy to be."

gentially, this conclusion is solidly buttressed by the fact that both Stuyvesant and the Hollipeters moved for summary judgment. When the undisputed facts of this case are viewed in the context of the controlling and applicable principles of law heretofore iterated, it becomes self evident that the trial court properly overruled Stuyvesant's motion for summary judgment and correctly sustained the Hollipeters' motion for summary judgment.

The judgment below is affirmed.

All concur.