**Dennis DAVIS and Susan Davis, Respondents,**

v.

**CLEARY BUILDING CORPORATION, Appellant.**

**No. WD 62449.**

Missouri Court of Appeals, Western District.

Sept. 14, 2004.

Patrick M. Reidy, Kansas City, MO, for appellant.

Drew F. Davis, Cameron, MO, for respondents.

Before NEWTON, P.J.,
BRECKENRIDGE and SPINDEN, JJ.

PATRICIA BRECKENRIDGE, Judge.

Cleary Building Corporation appeals the judgment entered in favor of Dennis and Susan Davis, husband and wife, on the Davises' action for rescission of their contract with Cleary to build a horse barn on the Davises' property. Cleary argues that rescission was not a proper remedy in this case because it fully performed under the terms of the contract and it is impossible

to restore the parties to the status quo. Cleary also contends that the trial court erred in awarding the Davises consequential damages. Because this court finds that the trial court erred in ordering rescission because the nature of the transaction in this case made it impossible to restore the parties to the status quo, that portion of the judgment is reversed, and the case is remanded for retrial on the issue of damages and the Davises' claims for breach of contract and violation of the Missouri Merchandising Practices Act.

### Factual and Procedural Background

During the summer of 2000, the Davises decided to purchase horses to raise on their property in Cameron. In need of shelter for their horses, the Davises began to gather information about horse barns. For several months, Mr. Davis researched post-frame building companies, including Cleary. On four to five occasions during November 2000, Mr. Davis met with Terry Sunderland, a sales representative for Cleary, to discuss Cleary's building products and the specifications of the building that the Davises desired. Throughout the course of these discussions, Mr. Sunderland told Mr. Davis that the advantage of choosing Cleary was that the building would be constructed with "Cleary columns," which are "continuous, non-spliced laminated treated columns from footing to eave." Cleary promoted such columns as being stronger than the columns used by its competitors.

Mr. Sunderland also provided Mr. Davis with several documents, which highlighted the strength of "Cleary columns." For example, Mr. Sunderland read an article from a trade magazine to Mr. Davis entitled "US Industry Today." This article touted Cleary and the "Cleary column," and specifically noted that a "Cleary column" is a continuous column of CCA treated timber that has no splices of untreated wood, is created by running three 2–by–6–inch pieces of lumber through a machine that nails them together, and that such columns are stronger than a solid 6–by–6–inch post. Mr. Sunderland also gave Mr. Davis a document entitled "Clearly Cleary Test," which compared Cleary to its competitors. This document represented "Cleary columns" as non-spliced lumber that is 2.4 times stronger than spliced columns used by Cleary's competitors. Another document presented to Mr. Davis, entitled "The Cleary Column," represented the "Cleary column" as unspliced from footing to eave and noted that tests performed on the columns have shown the columns to be "approximately twice as strong as a spliced laminated treated column." This document further represented that its test results are consistent with tests previously run by the University of Wisconsin.

Based on Cleary's representations, Mr. Davis ultimately determined that one important factor differentiating the post-frame building companies was the type of support columns used in the construction of the buildings, and that Cleary's columns were stronger than Cleary's competitors. Consequently, on November 28, 2000, the Davises entered into a contract with Cleary to construct a 36 × 54–foot horse barn on the Davises' property for $18,500. The contract specified that the construction was to be completed sometime between January and April 2001. The Davises told Cleary that they wanted their building to be constructed with columns placed every six feet on center throughout the building to give the building added strength. Even though this request deviated from Cleary's standard placement of the columns at nine feet on center, Cleary told the Davises that their building would be so constructed and the Davises agreed to pay the extra cost associated with their

request. The Davises paid Cleary $3,700 upon signing the contract and made an additional payment of $7,400 when the building materials were delivered to their property.

Sometime before March 15, 2001, while the Davises were out of town, Cleary constructed the Davises' horse barn. On March 15, when the Davises returned, Mr. Davis inspected the building and discovered problems with the construction and placement of the columns. Of particular significance, Mr. Davis found that, even though the building had the load-bearing columns on six-foot centers as the contract provided, four end-wall columns were missing. Additionally, Mr. Davis discovered that, of the twenty-four total columns that made up the building, only the four corner columns were "Cleary columns," with the remaining columns being spliced and untreated. Mr. Davis observed that' every truss in the building was bowed in a "C" or "S" shape. Mr. Davis also discovered other problems with the building, such as the metal on the interior of the building was caked in mud; the dirt floor of the building had huge ruts; several mounds of dirt were within the interior of the building; and the base of the columns were not compacted with dirt, as the dirt at the base of each column was approximately one foot down from the surface of the ground.

Upon his discoveries, Mr. Davis contacted Mr. Sunderland, who promptly came to the building site. Mr. Sunderland examined the barn and noted Mr. Davis' concerns. He informed Mr. Davis that he would relay his concerns to Cleary and get back with him. On March 16, 2001, Mr. Sunderland informed Mr. Davis that the building conformed to applicable industry standards and Cleary expected payment of the final installment of $7,400. As Mr. Sunderland was leaving, he reminded Mr. Davis that under the terms of the contract, any use of the building by the Davises would constitute acceptance.[1]

To avoid acceptance of the building, the Davises were forced to construct an interim structure to house their horses. For this project, the Davises spent a total of $11,651: $2,312 in building materials; $1,145 for gravel to extend the road to the interim structure; $2,042 in materials and labor to extend water and electric service to the interim structure; $5,867 in materials and labor for additional fencing; and $285 for an automatic feeder.

Dissatisfied with Cleary's response to their complaints, the Davises filed this suit. Count I of their petition sought damages, including punitive damages, or alternatively, rescission, for fraudulent misrepresentation. Count II sought damages, or alternatively, rescission, for negligent misrepresentation. Count III sought damages for breach of contract. Count IV sought damages, including punitive damages, for violation of the Missouri Merchandising Practices Act.[2] Cleary counterclaimed for the balance due under the contract.

At the conclusion of a one-day bench trial, the trial court indicated that it would

---

1. Mr. Sunderland told Mr. Davis, "if you're going to use that, you might need to look at the contract. The contract says if you use it you accept it, and they've gotten a lot of people that way."

2. Counts V–VIII of the Davises' first amended petition were similar claims against Mr. Sunderland for fraudulent misrepresentation, negligent misrepresentation, breach of contract, and statutory fraud. Before the submission of evidence at trial, the Davises dismissed their claims against Mr. Sunderland, and Cleary stipulated that all of the actions taken by Mr. Sunderland were within the scope of his employment with Cleary.

take the matter under advisement and allow both parties to submit briefs. Cleary then stated that to guide briefing, the Davises needed to address what "remedy" they were pursuing. In response, the Davises indicated that they were pursuing "rescission." Cleary immediately moved to dismiss Count III, breach of contract, and Count IV, violation of the Missouri Merchandising Practices Act, of the Davises' petition. The Davises did not object, and the trial court granted Cleary's motion to dismiss Counts III and IV. Thus, only Count I, fraudulent misrepresentation against Cleary, and Count II, negligent misrepresentation against Cleary, of the Davises' first amended petition remained.

On January 3, 2003, the trial court entered judgment in favor of the Davises on their claim for fraudulent misrepresentation, dismissed their claim for negligent misrepresentation, and ordered rescission of the contract. Specifically, the trial court found that: (1) the contract between Cleary and the Davises had not been fully performed; (2) rescission is a proper remedy when fraud is present; (3) Cleary made numerous representations to the Davises, including that the building would be built with "Cleary columns"; (4) Cleary's representations were false, in that the building only contained four "Cleary columns" and four columns were completely missing; (5) Cleary's representations were material, in that they were in regard to the strength of the building; (6) Cleary knew its representations were false; (7) the Davises relied on Cleary's representations; and (8) the Davises had a right to rely on Cleary's representations in a manner reasonably contemplated by Cleary.

The trial court ordered Cleary to refund the $11,100 already paid by the Davises, plus prejudgment interest, and to reimburse the Davises $5,499 of the additional expenses the Davises incurred in constructing the interim structure. In addition, the trial court granted Cleary the right to remove the structure by May 31, 2003, or forfeit the structure. The trial court also ordered Cleary to pay $10,000 in punitive damages. Finally, the trial court found against Cleary on its counterclaim. Cleary filed this appeal.

## Standard of Review

Review of this court-tried case is governed by the standard announced in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. The evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the trial court's judgment, and all contrary evidence and inferences must be disregarded. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo.App.2000).

## Rescission Improper Remedy

Cleary does not appeal the trial court's finding that it committed fraudulent misrepresentation. Rather, Cleary alleges that the trial court erred in awarding the remedy of rescission. Cleary argues that rescission is not a proper remedy in this case for two reasons. First, Cleary notes that a contract that has been fully performed cannot be rescinded. Because it fully performed under the terms of the contract, Cleary contends that rescission was, therefore, improper. Second, Cleary claims that rescission was improper because restoration of the parties to the status quo is a requirement for rescission, and restoration is not possible in this case.

■ Cleary is correct that "[a] contract that has been fully performed cannot be

rescinded by one of the parties." *Baker v. Whitaker*, 887 S.W.2d 664, 668 (Mo.App. 1994) (citing *Hoback v. Allen*, 216 S.W.2d 148, 151 (Mo.App.1948)). The trial court, however, specifically found that Cleary did not fully perform. Cleary argues that this finding was in error, because there can be no dispute that it constructed a 36 × 54–foot metal "post-frame" building on the Davises' property with the correct eave height and proper number of doors and windows. Rather, Cleary claims the dispute in this case merely concerns the quality of the materials it used to construct the building. Cleary alleges that such a dispute would support, at best, a finding of breach of contract, but would not support a finding of failure to fully perform.

■ In the context of construction contracts, " 'literal and precise performance is not demanded and slight or trivial defects, imperfections or variations' " will not preclude the contractor's recovery of the contract price " 'if the contractor has made an honest endeavor to comply and has substantially done so.' " *County Asphalt Paving Co. v. 1861 Group, Ltd.*, 851 S.W.2d 577, 581 (Mo.App.1993) (quoting *Quality Wig Co. v. J.C. Nichols Co.*, 728 S.W.2d 611, 619 (Mo.App.1987)). "A party's performance under a contract is substantial if the deviation from the contract was slight and if the other party received substantially the same benefit it would have from literal performance." *Gilmartin Bros., Inc. v. Kern*, 916 S.W.2d 324, 329 (Mo.App.1995). The question whether a party has substantially performed depends on the facts and circumstances of each particular case. *Id.*

■ In this case, the trial court found that Cleary represented, through its written materials and the oral statements of its sales representative, that the Davises' building would be constructed with "Cleary columns." The deciding factor in

Mr. Davis' choice of Cleary to construct his horse barn was the additional strength afforded a building due to the use of "Cleary columns," as touted by Cleary. Nevertheless, only four of the twenty-four columns used by Cleary to construct the Davises' horse barn were actually "Cleary columns." Moreover, Cleary altogether omitted four columns that were provided for in the contract. Deviations of this magnitude from both the terms of the contract and Cleary's own representations are certainly not slight or trivial. *See, e.g., County Asphalt*, 851 S.W.2d at 581 (finding that the contractor's failure to use the correct size of rock and mix of asphalt, which affected the strength and durability of the pavement, was a departure from the specifications and, thus, a failure to substantially perform). "In construction contracts, ... defects affecting structural soundness are ordinarily regarded as particularly significant." RESTATEMENT (SECOND) OF CONTRACTS section 241 cmt. b (1981). Correction of the deficiencies resulting from the use of non-"Cleary columns" would require the replacement of over eighty percent, or twenty of twenty-four, of the columns supporting the entire structure. To bring the building into compliance with the representations made by Cleary would essentially require the building to be rebuilt. Thus, this court finds that Cleary's deviations from its representations were so significant that the Davises did not receive substantially what they bargained for. Consequently, this court cannot say that the trial court's finding that Cleary failed to fully perform was clearly erroneous.

■ Cleary's second argument that rescission was improper in this case is that the equitable remedy of rescission is to be invoked only where the status quo may be substantially restored. Cleary argues that restoration is impossible in this case, given

that it has already expended its labor and materials in constructing a building. On the other hand, the Davises contend that rescission is appropriate because an absolute, literal return to the status quo is not required. While this court agrees with the Davises that an absolute and literal restoration of the parties to their former positions is not required, " 'the first and prime essential of rescission' " is that " 'he who seeks equity must do equity.' " *Kesinger v. Burtrum,* 295 S.W.2d 605, 610 (Mo.App. 1956) (citations omitted). *See also Hoback,* 216 S.W.2d at 151. And, to do equity, "neither party will be materially enriched or materially impoverished" by the relief. *See Kesinger,* 295 S.W.2d at 610. Moreover, as the Missouri Supreme Court stated in *Schurtz v. Cushing,* " [t]he books are full of decisions that if a party would rescind a contract *for fraud* or other cause, he must, as far as in his power, *put the other party in the condition he would have been in had the contract not been made.' "* 347 Mo. 113, 146 S.W.2d 591, 594 (1940) (citation omitted) (emphasis added).[3]

▮▮▮ In this case, the trial court ordered (1) the contract rescinded; (2) Cleary to remove the structure from the Davises' property by May 31, 2003, or thereafter forfeit the structure; (3) Cleary to return the $11,100, plus prejudgment interest, already paid by the Davises; and (4) Cleary to pay consequential and punitive damages. The trial court's judgment completely restores the Davises to the position they occupied at the time of the making of the contract. On the other hand, the trial court's attempt to restore Cleary to its former position fails. Rather, the trial court's judgment leaves Cleary in a relatively materially-impoverished position. Although through no fault of the Davises because they were out of town when Cleary built the barn, their failure to discover defects until after the building was constructed made it impossible to return Cleary to the status quo. Merely allowing Cleary to remove the building was not sufficient, because Cleary would have to expend money to remove and recover what would be used building materials. The nature of the transaction at issue in this case simply does not lend itself to restoration of the status quo for both parties. Rescission at this point would clearly prejudice Cleary. Therefore, this court finds that the trial court's judgment granting rescission of the contract, which restores the Davises to their former position while leaving Cleary in a disadvantaged position, was inequitable and, consequently, improper. *See id.* The judgment ordering rescission of the contract is reversed. Moreover, the trial court's judgment ordering Cleary to remove the building, return the moneys already paid to the Davises, pay the Davises $5,499 for the costs incurred as a result of not being able to use the building is reversed.[4] The reversal of an award of

---

**3.** In the earlier case of *Paquin v. Milliken,* 163 Mo. 79, 63 S.W. 417, 424 (1901), the Missouri Supreme Court reached a contrary result. In *Paquin,* the Court "held that the fact that the status quo cannot be restored will not prevent a rescission, where such condition results from the fraud of the defendant, and without the fault of plaintiff." Despite the Supreme Court's later contrary ruling in *Schurtz,* 347 Mo. 113, 146 S.W.2d 591, *Cass Bank & Trust Co. v. Mestman,* 888 S.W.2d 400, 405 (Mo. App.1994) relied on *Maupin v. Missouri State Life Insurance Co.,* 214 S.W. 398, 401 (Mo.

App.1919), which in turn relied on *Paquin,* to reach a contrary result.

**4.** In view of this court's disposition of the rescission issue, discussion of Cleary's argument that consequential damages are not available to a party who seeks rescission is not necessary. The same issue will not arise on remand because in a claim of fraud when pursuing actual damages, consequential damages are available. *See Hanes v. Twin Gable Farm, Inc.,* 714 S.W.2d 667, 670–71 (Mo.App. 1986). On remand, however, the parties

damages requires reversal of the award of punitive damages. *Vogt v. Hayes,* 54 S.W.3d 207, 211 (Mo.App.2001). *See also Williams v. Williams,* 99 S.W.3d 552, 556–57 (Mo.App.2003). Therefore, the punitive damages award of $10,000 is also reversed.

## Election of Remedies Doctrine Does Not Preclude Relief

 In finding that rescission is inappropriate in this case, the question arises as to what relief the Davises are entitled for Cleary's fraudulent misrepresentations. Generally, a victim of fraud can either "return what he purchased and get his money back (recission), or keep what he purchased and sue for damages measured as the difference between its value as represented and its true value as of the date of purchase (benefit of the bargain)." *Harris v. Union Elec. Co.,* 766 S.W.2d 80, 86 (Mo. banc 1989). *See also Vogt,* 54 S.W.3d at 211. As discussed earlier, however, rescission is not a viable remedy in this case. Thus, the issue is whether, having elected the remedy of rescission, the Davises are now prohibited under the election of remedies doctrine from recovering benefit-of-the-bargain damages for Cleary's fraudulent misrepresentations. Benefit-of-the-bargain damages are calculated as the "difference between the actual value of the property and what its value would have been if it had been as represented." *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988). Damages are measured at the time of the transaction. *Id.*

 "The purpose of the election of remedies doctrine is to prevent double recovery for a single injury." *Whittom v. Alexander–Richardson P'ship,* 851 S.W.2d 504, 506 (Mo. banc 1993). The doctrine is

"'merely a legal version of the idea that one can't have his cake and eat it too.'" *Id.* (quoting DAN B. DOBBS, REMEDIES, section 1.5 at 14 (1973)). *See also Moore v. Mo.–Neb. Exp., Inc.,* 892 S.W.2d 696, 706 (Mo.App.1994). In particular, the doctrine of election of remedies maintains that one "may not obtain both damages for fraudulent inducement to enter into a contract and a remedy prohibiting the enforcement of the contract as written," i.e., rescission. *Harris,* 766 S.W.2d at 87. Thus, the Davises cannot obtain both actual damages on the contract and rescission. *Id.* The rule, however, is subject to the exception that, to constitute a bar, the remedy elected must be an appropriate and effectual one. *Bourguignon v. Thirteen–Fifty Inv. Co.,* 759 S.W.2d 300, 304 (Mo.App.1988) (citing *Hollipeter v. Stuyvesant Ins. Co.,* 523 S.W.2d 595, 598 (Mo.App.1975)). In other words, a distinction is recognized between pursuit of inconsistent remedies and "pursuit of an imaginary or mistaken remedy." *Hollipeter,* 523 S.W.2d at 598. Unlike pursuit of one of two or more inconsistent remedies, "pursuit of an imaginary or mistaken remedy does not bar the subsequent pursuit of a viable remedy." *Id.* at 598–99.

 In electing to seek rescission, the Davises expressed a preference to repudiate the contract and be restored to the status quo. Had restoration been possible in this case, rescission of the contract would have precluded the Davises from pursuing actual damages. When a plaintiff, however, does not have "two remedies in point of fact," the fact that he sought a remedy to which he was not entitled does not bar him from pursuing a remedy to which he is entitled. *Pemberton v. Ladue*

should take note of Rule 55.19, which requires that special damages be specifically pled.

*Realty & Constr. Co.*, 359 Mo. 907, 224 S.W.2d 383, 385 (1949). "Where ... the court determines that rescission is not available because the parties cannot be restored to the status quo ..., then the doctrine of election of remedies will not operate to deny the allegedly defrauded party an opportunity to maintain a suit at law for damages." *Luciani v. Bestor*, 106 Ill.App.3d 878, 62 Ill.Dec. 501, 436 N.E.2d 251, 255 (1982). In this case, because the parties cannot be restored to the status quo and, therefore, rescission was never a viable remedy, this court finds that the Davises chose to pursue a mistaken remedy. Thus, the doctrine of election of remedies does not bar the Davises from pursuing the alternative remedy for fraudulent misrepresentation, benefit-of-the-bargain damages, as well as consequential and punitive damages. *See Hollipeter*, 523 S.W.2d at 598–99; *Pemberton*, 224 S.W.2d at 385. *See also Hanes v. Twin Gable Farm, Inc.*, 714 S.W.2d 667, 670–71 (Mo. App.1986) (holding that consequential damages are available in addition to actual damages in fraud case). Therefore, the case is remanded for retrial for determination of damages under the "benefit-of-the-bargain" rule.

▇▇▇ When the Davises elected to pursue the remedy of rescission, the trial court dismissed their claims for breach of contract and violation of the Missouri Merchandising Practices Act. Because the Davises were mistaken as to the viability of that remedy, the question arises as to whether the Davises should be permitted to proceed with their claim for breach of contract and violation of the Missouri Merchandising Practices Act. Both claims were dismissed at the close of the entire case when the Davises elected to rescind the contract. As pled, the Davises only sought money damages on their claims for breach of contract and violation of the

Missouri Merchandising Practices Act. Thus, in electing rescission, "which depends on rejection of the contract as written," the Davises could not also obtain actual damages on the contract, as an award of actual damages depends on affirmation of the contract. *Harris*, 766 S.W.2d at 86, 87. Therefore, in electing to pursue the remedy of rescission, the Davises would have been unable to also seek the relief they sought for their claims of breach of contract and violation of the Missouri Merchandising Practices Act. *Id.* Thus, if rescission of the contract had been a viable remedy, both claims would have been properly dismissed.

▇▇▇ Since rescission was not a viable remedy, a claim for breach of contract and a claim for fraudulent misrepresentation are not inconsistent legal theories. *Vogt*, 54 S.W.3d at 211 (citing *Kincaid Enters., Inc. v. Porter*, 812 S.W.2d 892, 900–01 (Mo.App.1991)). Legal theories are inconsistent if "proof of one necessarily negates, repudiates, and disproves the other." *Whittom*, 851 S.W.2d at 507. "A party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively." *Kincaid*, 812 S.W.2d at 900. Consequently, by removing the remedy of rescission from the analysis, and recognizing that claims of breach of contract and violation of the Missouri Merchandising Practices Act, and of fraudulent misrepresentation are not inconsistent legal theories of recovery, the Davises are now entitled to pursue all of their claims. Similarly, because actual damages for breach of contract (and violation of the Missouri Merchandising Practices Act) and benefit-of-the-bargain damages for fraud are not inconsistent remedies in that they both rest on affirmance of the contract, the

Davises are not required to make an election of remedies. *Id.* The Davises, however, are not entitled to "be made more than whole or receive more than one full recovery for the same harm." *Id.* Thus, if damages for breach of contract, violation of the Missouri Merchandising Practices Act, and fraud "are the same, then the damage award merges." *Vogt,* 54 S.W.3d at 211. In sum, on remand, in addition to retrial on benefit-of-the bargain damages for fraudulent misrepresentation, the Davises are also entitled to pursue actual damages on their claims for breach of contract and violation of the Missouri Merchandising Practices Act.

### Conclusion

Because it was impossible to restore the parties to the status quo, given the nature of the transaction in this case, the trial court's judgment granting rescission of the contract is reversed. Accordingly, the trial court's order that Cleary remove the building, return the moneys already paid to the Davises, pay the Davises $5,499 for the costs incurred as a result of not being able to use the building, and pay punitive damages in the amount of $10,000 is reversed. The case is remanded for retrial on the issue of actual, consequential, and punitive damages for fraudulent misrepresentation and the Davises' claims for breach of contract and violation of the Missouri Merchandising Practices Act. The judgment is affirmed in all other respects.

All concur.