GOLDILUXE, LLC, Trustee under
the Elm and Cromwell Trust,
Appellant,

v.

Darlene J. ABBOTT, Respondent.

No. SD 29560.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 27, 2010.

Motion for Rehearing or Transfer to
Supreme Court Denied Feb. 23, 2010.

Application for Transfer Denied
April 20, 2010.

Russ Schenewerk, Russ Schenewerk & Assoc., LLC, Branson, for appellant.

Gary W. Allman, Branson, for respondent.

DANIEL E. SCOTT, Chief Judge.

Appellant (Plaintiff) challenges a judgment denying rescission and damages involving a real estate purchase from Respondent (Defendant).

### General Principles of Review

We must affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Gifford v. Geosling,* 951 S.W.2d 641, 643 (Mo.App.1997). Fact issues upon which no specific finding was made are deemed as found in accordance with the result. Rule 73.01.[1] We view all evidence and reasonable inferences in favor of the judgment and disregard those to the contrary,[2] and will affirm the judgment if we can do so on any reasonable theory. *Gifford,* 951 S.W.2d at 643–44.

---

1. Rule references are to Missouri Court Rules (2008). Statutory citations are to RSMo Supp.2001.

2. Thus, we apply the same principles in describing the facts and evidence herein. *See Ray Klein, Inc. v. Kerr,* 272 S.W.3d 896, 898 (Mo.App.2008).

## Facts and Background

Plaintiff was formed and managed by Ruby Rieta, a California resident, for the purpose of buying and owning real estate. Plaintiff contracted in 2005 to buy Defendant's rental property near Elm and Cromwell Streets in Hollister, Missouri, including a three-bedroom house, a cabin, and three mobile homes, for $140,000. Defendant falsely denied knowing whether anyone with a methamphetamine-related conviction had lived at the property. Defendant's son lived in the house and Defendant knew of his 1999 meth conviction. As the trial court later determined, Defendant's misrepresentation violated § 442.606.2(5).[3]

Ms. Rieta did not personally visit the property or attend the August 2005 closing, but she saw photos and a video from her realtor, hired a property inspector, and reviewed his report. Plaintiff paid $50,000 at closing and gave Defendant a monthly-pay note and deed of trust for the $90,000 balance. After closing, Plaintiff hired a local property manager, and by December 2005, most of Defendant's previous tenants were moved out.

Police raided the property on December 28, 2005. They made meth-related arrests and called Ms. Rieta in California, who shortly thereafter made her first visit to the property. She considered two of the trailers, each about 30 years old, uninhabitable. They had old plumbing and wiring, and would cost some $18,000 to repair, so she bought two new trailers from Dogwood Homes, which removed the two old trailers—breaking water lines that fed the whole property in the process—and moved them to its lot. One of the new trailers has been moved onto the property; the other still sits at Dogwood Homes.

Plaintiff continued to run the property for a full year after the raid, collecting rents and making monthly payments to Defendant, but defaulted on its note in early 2007 and Defendant sought to foreclose. Alleging misrepresentation, Plaintiff petitioned to enjoin foreclosure (Count I), to rescind its purchase (Count II), and for money damages (Count III). After the trial court entered a TRO against the scheduled foreclosure sale, Defendant counterclaimed for waste and destruction of mortgaged property.

The parties presented their evidence at a May 2008 bench trial. The court found that Defendant fraudulently misrepresented the property and violated § 442.606, but that rescission was not a suitable remedy since Plaintiff substantially changed the property's condition, so the parties could not be returned to their original positions. Also, damages could not be awarded because Plaintiff failed to offer appropriate evidence. The court thus denied these claims and all other relief, including Defendant's counterclaim. Plaintiff's appeal raises two points.

## Point I—Rescission

■ Plaintiff claims the finding that rescission was not a suitable remedy was against the weight of the evidence, a complaint we consider with "extreme caution" since we will set aside a judgment on that basis only if we firmly believe that the judgment was wrong. *Ray Klein*, 272 S.W.3d at 898.

■ We do not firmly believe the trial court was wrong to find that it could not substantially restore the status quo as rescission normally requires; *i.e.*, return

3. This statute requires written disclosure if a seller knows that someone with a meth-relat- ed conviction has resided at the property.

each party to its pre-contractual condition without material enrichment or impoverishment. *See Davis v. Cleary Building Corp.*, 143 S.W.3d 659, 666–67 (Mo.App. 2004).[4] Viewing the record as we must, the property's value plunged during Plaintiff's ownership for reasons other than Defendant's fraud. After an inspection, Plaintiff willingly paid $140,000 for the property in its August 2005 condition and did not seek rescission after the raid, or after Ms. Rieta talked with police, came to Missouri, and saw the property herself. Instead, Plaintiff operated the property and kept paying Defendant for another full year, before defensively asserting rescission when Defendant sought to foreclose, then keeping possession of the property under a TRO until trial, by which time the property was worth only $59,500.[5]

■ All this supports the conclusion that Plaintiff's rescission request[6] would have materially impoverished Defendant. A party seeking rescission must do so promptly upon discovering the reason and need therefor, before the other party is placed in a position to be prejudiced by such relief. *See Blakeley v. Bradley*, 281 S.W.2d 835, 841 (Mo.1955); *Sheinbein v. First Boston Corp.*, 670 S.W.2d 872, 877 (Mo.App.1984). Authorities so indicate even when the defendant may be guilty of fraud. *Blakeley*, 281 S.W.2d at 841 (citing C.J.S., Am.Jur., and Restatement of Contracts).

Nonetheless, Plaintiff also claims the trial court misapplied the law, and that if the status quo cannot be restored due to fraud, rescission still may lie. It cites *Cass Bank & Trust Co. v. Mestman*, 888 S.W.2d 400, 405 (Mo.App.1994), which followed *Maupin v. Missouri State Life Insurance Co.*, 214 S.W. 398, 401 (Mo.App.1919), which relied in turn upon *Paquin v. Milliken*, 163 Mo. 79, 63 S.W. 417, 424 (1901), in which our supreme court said "the fact that the status quo cannot be restored will not prevent a rescission, where such condition results from the fraud of the defendant, and without the fault of plaintiff."

Yet as *Davis* recently noted, *Paquin's* century-old comment seems contrary to our supreme court's later observation that " '[t]he books are full of decisions' " that to rescind a contract for fraud, a plaintiff " 'must, as far as in his power, put the other party in the condition he would have been in had the contract not been made.' " *Schurtz v. Cushing*, 347 Mo. 113, 146 S.W.2d 591, 594 (1940)(quoting *Jarrett v. Morton*, 44 Mo. 275, 278 (1869)), *cited by Davis*, 143 S.W.3d at 667 & n. 3.

This court is bound to follow our supreme court's most recent controlling decision. *See Kinder v. Missouri Dept. of Corrections*, 43 S.W.3d 369, 374 (Mo.App. 2001). *Paquin's* comment does not fit this case in any event, as the property's devaluation was not shown to have resulted "from the fraud of the defendant, and

4. Although equity does not demand absolute and literal return to prior positions, " 'the first and prime essential of rescission' is that 'he who seeks equity must do equity,' " which means in part that " 'neither party will be materially enriched or materially impoverished' by the relief." *Davis*, 143 S.W.3d at 667 (quoting *Kesinger v. Burtrum*, 295 S.W.2d 605, 610 (Mo.App.1956)).

5. This appraisal apparently excluded the two old trailers on Dogwood Homes' lot, but they

were "uninhabitable" and worth little or nothing under Plaintiff's own evidence.

6. Plaintiff sought return of its $50,000 down payment, plus $14,054 in note payments and $36,750 paid to Dogwood Homes for the two new trailers. Plaintiff still owed $10,000 on the new trailers, and Ms. Rieta testified that Defendant could have the trailers if she would pay the remaining balance.

without the fault of plaintiff." 63 S.W. at 424.

Plaintiff has not shown trial error in denying rescission.[7] Point I fails.

### Point II—Damages

 Point II states that the trial court erred in not awarding damages "in that if [Plaintiff] is truly not entitled to rescission, it is not barred from seeking damages for fraud *on remand*, its election of rescission at trial notwithstanding." [Emphasis added.] This is a *non sequitur*—the quoted text does not show how the trial court "erred in declining to award damages." Plaintiff does not claim that it proved its damages at trial, or that the trial court used the wrong damage standard, or that any damages could have been proper on the trial record before us. Rather, Plaintiff argues that "the issue of damages was not properly before the trial court, such that its ruling on the issue was void." We disagree.

A fraud victim may affirm the contract and sue for damages, or disaffirm it and sue for rescission, but cannot have both remedies since they are inconsistent. *Shaw v. Raymond*, 196 S.W.3d 655, 661 (Mo.App.2006). Still, Rule 55.10 lets one *plead* for both remedies and Plaintiff did so in alternative counts. The record does not reflect Plaintiff's formal election, abandonment, or dismissal of either claim prior to, during, or at the close of trial. Plaintiff focused on rescission at trial, but the trial court did not compel it to elect a remedy and did not limit evidence on any of Plaintiff's pleaded claims. Plaintiff simply did not offer evidence on its damage claim, although it was pending and the trial court had to resolve it as part of the case.

Plaintiff argues that failure of its rescission claim did not preclude it from proving and recovering damages. *See Shaw*, 196 S.W.3d at 662; *Davis*, 143 S.W.3d at 668–69. Yet Plaintiff had that chance at trial, and has not shown why it should get a judicially-inefficient second bite at the apple.[8] In any event, Plaintiff has not shown trial court error in the denial of damages. Point II fails. The judgment is affirmed.

RAHMEYER, J., and RUSSELL, SP. J., concur.

---

7. Plaintiff's final argument against the rescission ruling—that the result renders § 442.060 and its disclosure requirements meaningless—ignores Plaintiff's alternative claim for money damages, considered *infra*.

8. Plaintiff misreads cases like *Shaw* and *Davis*, in which trial courts granted rescission, and dismissed or otherwise did not reach the merits of the damage claims, necessitating remand when those rescissions were reversed on appeal. *See Shaw*, 196 S.W.3d at 658, 661, 662; *Davis*, 143 S.W.3d at 669. No such remand is needed here, since the trial court already has tried and denied Plaintiff's damage claim for want of proof.